119 P.3d 624

AMERITEL INNS, INC.; H. Scott Brown and Edna Brown, husband and wife; Dave Wilder and Cathie Wilder, husband and wife; Steve Bertoni and Julie Bertoni, husband and wife; and George Mc Donough and Aurora Mc Donough, husband and wife, Plaintiffs–Appellants,

v.

GREATER BOISE AUDITORIUM DISTRICT, Larry May, Michael D. Fitzgerald, Marcy Timm, C. Dan Brown, Stephenson S. Youngerman, and Ed Pilkerton, Defendants–Respondents.

No. 30698.

Supreme Court of Idaho, Boise, March 2005 Term.

Aug. 11, 2005.

Brook B. Bond, Boise, for appellants.

Hawley, Troxell, Ennis & Hawley, Boise, for respondents. Eugene Ritti argued.

EISMANN, Justice.

This is an appeal from a judgment dismissing an action seeking to prevent the Greater Boise Auditorium District from expending public funds or employee time to influence a bond election. The district court held that the plaintiffs did not have standing to bring this action and that the Auditorium District was authorized to expend public funds to promote passage of the bond measure. We reverse, holding that AmeriTel Inns, Inc., has standing to bring this action and that the Auditorium District did not have authority to use public funds to influence a contested election.

## I. FACTS AND PROCEDURAL HISTORY

The defendant Greater Boise Auditorium District (Auditorium District) is an auditorium district organized in 1959 pursuant to Idaho Code §§ 67–4901 *et seq.* It was organized to "build, operate, maintain, market and manage for public, commercial and/or industrial purposes by any available means public auditoriums, exhibition halls, convention centers, sports arenas and facilities of a similar nature." I.C. § 67–4902 (2001). The

individuals named as defendants were the elected directors of the auditorium district and its general manager.

The Auditorium District owns and operates the Boise Centre on the Grove, a convention center located in the heart of downtown Boise. It desired to expand that facility by constructing a second convention center nearby and wanted to finance that construction by issuing bonds. This proposed expansion was called the Capital Station project. It scheduled an election to be held on February 3, 2004, in order to obtain voter approval to issue the bonds.

The plaintiff AmeriTel Inns, Inc., (Ameri-Tel) is a corporation that operates three hotels within the geographic boundaries of the Auditorium District, and the remaining plaintiffs are qualified electors who reside within the District. On January 16, 2004, they filed this action seeking to restrain the Defendants from using any public funds, including the Auditorium District's facilities or employees, to advocate voter approval of issuing the bonds. On January 21, 2004, the Plaintiffs filed an amended complaint adding a claim that the Defendants violated the open meeting laws in Idaho Code §§ 67–2340 *et seq.*

The district court heard the Plaintiffs' request for a temporary restraining order on January 22, 2004. The next day it issued a written decision denying the requested restraining order. The court determined: (1) the Plaintiffs did not have standing to challenge the Auditorium District's use of public funds to promote passage of the bond issue; (2) the District's use of public funds to promote the passage of the bond issue was not prohibited by any statutory or constitutional provision; (3) the Plaintiffs had not shown that they would be irreparably harmed if the restraining order was not issued; and (4) the Plaintiffs did not offer any evidence showing a violation of the open meeting laws.

On January 28, 2004, the district court issued a written notice informing the parties that with the denial of the requested temporary restraining order, there did not appear to be anything more for the court to determine. It gave notice that it would dismiss the complaint within twenty days unless the Plaintiffs could demonstrate that there was an unresolved issue remaining for the court's determination.

The bond election was held on February 3, 2004. The voters did not give the issue the two-thirds majority vote required for approval.

On February 17, 2004, the Plaintiffs responded to the district court's notice of intent to dismiss by requesting permission to file a second amended complaint. The proposed second amended complaint sought a declaratory judgment that Auditorium District's expenditure of public funds to support the passage of the bond issue violated state law and a judgment requiring the Defendants to reimburse the Auditorium District for all such expenditures. On March 18, 2004, the district court heard oral argument on the Plaintiffs' request to file the second amended complaint. By order entered on March 31, 2004, it denied that request, and by judgment entered the same date it dismissed the Plaintiffs' amended complaint with prejudice. The Plaintiffs then timely appealed.

## II. ISSUES ON APPEAL

A. Is this case moot?

B. Do any of the Plaintiffs have standing to bring this action?

C. Can the Auditorium District use its funds to campaign in a bond election?

## III. ANALYSIS

### A. Is This Case Moot?

██ Because the election has already been held, the Defendants contend that the issue raised by the Plaintiffs is moot. It is too late to enjoin them from using public funds to campaign in favor of the bond issue. An injunction cannot restrain an act already completed. *Brady v. City of Homedale*, 130 Idaho 569, 944 P.2d 704 (1997).

██ An issue becomes moot if it does not present a real and substantial controversy that is capable of being concluded through judicial decree of specific relief. *State v. Rogers*, 140 Idaho 223, 91 P.3d 1127 (2004). There are three recognized exceptions to the mootness doctrine: (1) when there is the

possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest. *Id.* The substantive issue presented in this case is whether public entities can use public funds to campaign in an election. That is an issue of substantial public interest that this Court has not yet addressed. We will therefore address the issue to provide guidance and direction in the future.

**B. Do any of the Plaintiffs Have Standing to Bring this Action?**

The district court found that none of the Plaintiffs have standing to bring this action. This Court must decide that issue before reaching the merits of the case. *Young v. City of Ketchum,* 137 Idaho 102, 44 P.3d 1157 (2002). A person wishing to invoke a court's jurisdiction must have standing to raise the issue to be litigated. *Id.* It is not enough that the party is a concerned citizen who seeks to ensure that a governmental entity abides by the law. *Thomson v. City of Lewiston,* 137 Idaho 473, 50 P.3d 488 (2002). To have standing, a litigant must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury. *Id.* A citizen or taxpayer may not challenge a governmental enactment where the injury is one suffered alike by all citizens and taxpayers of the jurisdiction. *Id.*

**1. Do the individual Plaintiffs have standing?** The individual Plaintiffs contend that they have standing because they are voters who were opposed to the Auditorium District incurring indebtedness to expand the convention center. Relying upon *Van Valkenburgh v. Citizens for Term Limits,* 135 Idaho 121, 15 P.3d 1129 (2000), they contend that the Auditorium District's use of public funds to promote passage of the bond issue greatly diminished the likelihood that the bond issue would be defeated. The petitioners in *Van Valkenburgh* sought to challenge a statute requiring the Secretary of State to place on ballots information advising voters whether a particular Congressional

candidate had taken or broken a term limits pledge. The *Van Valkenburgh* Court held that the petitioners had standing to litigate that issue. When so holding, the *Van Valkenburgh* Court relied upon three factors: (1) "The Petitioners allege the law violates their right to vote because the law will infringe on the rights of qualified voters to cast their votes effectively by 'greatly diminishing the likelihood the candidate of their choice will prevail in the election' "; (2) "[T]he Petitioners allege the law infringes on their right to vote because it constitutes a state invasion of the privacy and sanctity of the voting booth"; and (3) The challenged statute "adversely impacts only those registered voters who oppose the term limits pledge, or who support candidates who oppose the term limits pledge." 135 Idaho at 125, 15 P.3d at 1133. All three of those factors do not exist in this case. There is no allegation that the Auditorium District did anything that would invade the privacy and sanctity of the voting booth. The remaining factors—that the individual Plaintiffs opposed the bond issue and that the Auditorium District's spending of public funds to campaign increased the chances of its passage—are not sufficient to give them standing.

**2. Does AmeriTel have standing?** AmeriTel contends that it had standing because it is a taxpayer, the proposed expansion of the convention center would negatively impact AmeriTel's business, and the Auditorium District was using tax monies to finance speech with which AmeriTel disagreed, in violation of its First Amendment rights. We need only address the first two arguments because we find that AmeriTel has standing based upon the facts that it is a taxpayer and that it alleged that the proposed expansion of the convention center would have negatively impacted its business by competing with it regarding the rental of meeting space.

In its proposed second amended complaint, AmeriTel alleged that "the substantial expansion of meeting facilities proposed in the Capital Station project ... will increase the District meeting space that is in competition with meeting space of AmeriTel." This is an allegation of a particularized injury that is

not one suffered alike by all citizens within the boundaries of the Auditorium District. *Boundary Backpackers v. Boundary County,* 128 Idaho 371, 913 P.2d 1141 (1996) (allegation that county land use ordinance applicable to federal lands would negatively impact the business of a commercial guide by limiting the open space available for operating his business was sufficient to afford standing to challenge the ordinance).

The Auditorium District is funded in part by a tax upon receipts by hotels and motels within the District obtained from the furnishing of hotel and motel rooms. I.C. § 67–4917B. If the current 4% tax proved insufficient to pay the debt service on the proposed bonds, the District intended to raise the tax to 5%. AmeriTel operates three hotels within the Auditorium District and pays over $200,000 annually in such taxes. The district court held that AmeriTel was not a taxpayer because it was able to pass that tax through to its customers. That fact does not mean that AmeriTel is not the taxpayer. The tax is assessed against a portion of AmeriTel's gross business income. All businesses, if they are to survive, must be able to pass the costs associated with doing business, including taxes, on to their customers. The fact that a business is able to do so does not mean that it is not the taxpayer. The statute authorizing the Auditorium District to impose the tax does not require a hotel or motel to increase their prices by the amount of the tax. Therefore, the legal incidence of the tax falls upon the hotels and motels within the Auditorium District. *V–1 Oil Co. v. State Tax Comm'n,* 98 Idaho 140, 559 P.2d 756 (1977). The fact that AmeriTel is one of a limited number of taxpayers is relevant to standing because its claim in this case is directly related to the tax it is required to pay. *Miles v. Idaho Power Co.,* 116 Idaho 635, 778 P.2d 757 (1989) (ratepayer had standing to challenge legislation implementing an agreement between the state and the power company that would allegedly raise power rates); *Alpert v. Boise Water Corp.,* 118 Idaho 136, 795 P.2d 298 (1990) (utility users had standing to challenge a franchise agreement between the utilities and the city because the 3% franchise fee paid by the utilities under that agreement was added to

the plaintiffs' utilities bills). For the reasons stated above, we hold that AmeriTel has standing to bring this lawsuit.

## C. Can the Auditorium District use its funds to campaign in a bond election?

■ The Auditorium District is a governmental entity. *Greater Boise Auditorium Dist. v. Royal Inn of Boise,* 106 Idaho 884, 684 P.2d 286 (1984). Its monies are public funds. The issue, therefore, is whether the legislature has authorized it to use public funds to campaign in a contested election.

The legislature has granted broad powers to auditorium districts. An auditorium district is created "to build, operate, maintain, market and manage for public, commercial and/or industrial purposes by any available means public auditoriums, exhibition halls, convention centers, sports arenas and facilities of a similar nature." I.C. § 67–4902. Consistent with the purpose for its creation, it has the power "to construct, maintain, manage, market and operate such facilities." *Id.* The board of directors of an auditorium district is likewise granted broad powers. Those powers include "building, erecting, marketing or constructing facilities within the district," incurring indebtedness and issuing bonds, and exercising "all rights and powers necessary or incidental to or implied from the specific powers granted." I.C § 67–4912.

The use of public funds to campaign in a contested election is not one of the powers expressly granted to the board of an auditorium district. If such use is permissible, it must be within the implied powers of the board. This Court has not addressed the issue of whether the board of a governmental entity has the implied power to use public funds to influence the voters in a contested election. Other courts have addressed that issue, however.

In *Mines v. Del Valle,* 201 Cal. 273, 257 P. 530 (1927), the California Supreme Court upheld judgments against the members of the board of public service commissioners, the controller of the public service department, the auditor, and the treasurer of the city of Los Angeles for their use of public

854

funds in an attempt to influence voters to approve a bond issue for the purpose of expanding the city's municipal electrical generating system. In upholding the judgments against the city officials for the wrongful use of public funds, the California Supreme Court reasoned as follows:

> While the proposition to issue bonds received a majority of the votes cast at the election, it did not receive a two-thirds favorable vote as required by the statute in order that the bonds might be issued. It must be conceded that the electors of said city opposing said bond issue had an equal right to and interest in the funds in said power fund as those who favored said bonds. To use public funds to advocate the adoption of a proposition which was opposed by a large number of said electors would be manifestly unfair and unjust to the rights of said last-named electors, and the action of the board of public service commissioners in so doing cannot be sustained, unless the power to do so is given to said board in clear and unmistakable language.

257 P. at 537.

The California Supreme Court again addressed the issue in *Stanson v. Mott,* 17 Cal.3d 206, 130 Cal.Rptr. 697, 551 P.2d 1 (1976). The defendant in that case was the director of the California Department of Parks and Recreation. He had authorized the use of public funds to promote the passage of a bond issue to provide money for the future acquisition of park land and recreational and historical facilities by state and municipal authorities. The plaintiff brought an action seeking a judgment requiring the director personally to repay to the state treasury the public funds spent on such advertising. The trial court dismissed the complaint, and the California Supreme Court reversed. It reaffirmed the *Mines* decision, and in doing so stated as follows:

> Indeed, every court which has addressed the issue to date has found the use of public funds for partisan campaign purposes improper, either on the ground that such use was not explicitly authorized or on the broader ground that such expenditures are never appropriate. As in the instant case, the majority of these decisions related to expenditures in connection with bond elections.
>
> Underlying this uniform judicial reluctance to sanction the use of public funds for election campaigns rests an implicit recognition that such expenditures raise potentially serious constitutional questions. A fundamental precept of this nation's democratic electoral process is that the government may not "take sides" in election contests or bestow an unfair advantage on one of several competing factions. A principal danger feared by our country's founders lay in the possibility that the holders of governmental authority would use official power improperly to perpetuate themselves, or their allies, in office; the selective use of public funds in election campaigns, of course, raises the specter of just such an improper distortion of the democratic electoral process.

130 Cal.Rptr. 697, 551 P.2d at 8–9 (citations omitted). *See also Porter v. Tiffany,* 11 Or. App. 542, 502 P.2d 1385 (1972), and the cases cited therein. The Auditorium District has not cited a single case holding that a governmental entity has the implied authority to use public funds in order to influence a contested election.

We find it significant that the Idaho legislature has made most provisions of the Idaho Sunshine Law, I.C. §§ 67–6601 *et seq.,* applicable to "all auditorium district elections." I.C. § 67–4931.[1] Because auditorium district elections are not statewide elections, they would not have been subject to the Sunshine Law except for § 67–4931, which expressly makes them subject to that Law. The Sunshine Law requires the reporting of campaign contributions and expenditures and places limits on contributions. It also requires reporting of independent expenditures. There is nothing in that law, however, indicating that the legislature contemplated that public funds would be expended for the purpose of supporting or opposing any candidate or measure in an election. The defini-

1. The provisions of the Sunshine Law not applicable to auditorium district elections are those concerning lobbyists (I.C. §§ 67–6617 through 67–6622) and persuasive polls (I.C. § 67–6629).

tion of "political committee" authorized to receive contributions and make expenditures does not include a governmental entity, I.C. § 67–6602(n), nor does the definition of a "person" authorized to make independent expenditures, (I.C. § 67–6602(m)). Considering the weight of authority from other jurisdictions and the lack of any indication that the legislature contemplated that public funds would be expended to influence a contested election, we hold that the Auditorium District could not make any expenditure to support or oppose any measure to be voted upon in an auditorium district election, without express legislative authority. Since the legislature did not grant such authority, the district court erred in holding that the Auditorium District had authority to make such expenditures. There remains the issue of whether any expenditures made by the auditorium district were for the purpose of supporting the passage of the bond measure or were merely providing factual information regarding the bond election. The district court did not rule on that issue, and we express no opinion regarding it.

In the prayer of their amended complaint, the plaintiffs requested that the individual defendants be ordered to reimburse the Auditorium District for the public funds and staff time that they authorized to be used for promoting the bond election. Considering that this Court has never previously addressed the issue presented in this case, that there is no allegation that the individual defendants acted in bad faith, and that the expenditure of such funds was arguably within the implied power of the District's board, this opinion shall have prospective application only.

The defendants request the award of attorney fees on appeal pursuant to Idaho Code § 12–121. Because they did not prevail in the appeal, they are not entitled to an award of attorney fees under that statute. *King v. King*, 137 Idaho 438, 50 P.3d 453 (2002).

## IV. CONCLUSION

We affirm the holding of the district court that the individual plaintiffs did not have standing to bring this action, but we reverse the holding that AmeriTel did not have standing. We also reverse the holding that the Auditorium District was authorized to use public funds to advocate passage of the bond measure. We must remand this case for the district court to determine whether the Auditorium District's conduct constituted such advocacy. We therefore vacate the judgment of the district court and remand for further proceedings consistent with this opinion. Costs on appeal are awarded to the appellant AmeriTel.

Chief Justice SCHROEDER, Justices TROUT, BURDICK and Justice Pro Tem WALTERS concur.

