130 P.3d 1082

The **AMERICAN LUNG ASSOCIATION OF IDAHO/NEVADA, a non-profit corporation, Safe Air for Everyone, aka "Safe", a non-profit corporation, and the Idaho Conservation League, a non-profit corporation, Petitioners–Appellants,**

v.

**STATE of Idaho, DEPARTMENT OF AGRICULTURE, Respondent.**

No. 31842.

Supreme Court of Idaho,
Boise, February 2006 Term.

Feb. 22, 2006.

field burning. We hold that this case is not moot and that the Director's determination was not arbitrary, capricious, or an abuse of discretion. We therefore affirm.

## I. FACTS AND PROCEDURAL HISTORY

While there was a pending lawsuit seeking to have the post-harvest burning of straw and stubble in Northern Idaho Kentucky bluegrass fields declared to constitute a nuisance and trespass, the legislature passed Idaho Code § 22–4803A. That statute declares that crop residue burning conducted in accordance with Idaho Code § 22–4803 shall not constitute a private or public nuisance, nor shall it constitute a trespass. I.C. § 22–4803A(6). We upheld the constitutionality of that statute in *Moon v. North Idaho Farmers Ass'n*, 140 Idaho 536, 96 P.3d 637 (2004). Idaho Code § 22–4803 requires that the Director of the Department of Agriculture determine whether economically viable alternatives to burning are available for: (a) disposing of crop residues, (b) developing physiological conditions conducive to increased crop yields, and (c) controlling diseases, insects, pests, or weed infestations.

On June 28, 2004, the Director issued a written determination finding that there were no economically viable alternatives to crop burning. The Petitioners then timely filed a petition in the district court seeking judicial review of the Director's determination. The district court upheld the Director, and the Petitioners timely appealed to this Court.

Bradford M. Purdy, Boise, for appellants.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Clay R. Smith argued.

EISMANN, Justice.

This is an administrative appeal challenging the 2004 determination by the Director of the Department of Agriculture that there are no economically viable alternatives to field burning. The Department alleges that this case is moot due to the Petitioners' failure to challenge the 2005 determination upholding

## II. ISSUES ON APPEAL

A. Is this case moot?

B. Was the director's determination arbitrary, capricious, or an abuse of discretion?

## III. ANALYSIS

### A. Is This Case Moot?

This lawsuit challenges the Director's determination made in 2004 that there are no economically viable alternatives to field burning. The Department of Agriculture (Department) contends that this case is moot

because the Director made another determination in 2005. It argues that because the 2005 determination superseded the 2004 determination, and the Petitioners did not appeal the 2005 determination, any challenge to the 2004 determination is therefore rendered moot.

■■■ "An issue becomes moot if it does not present a real and substantial controversy that is capable of being concluded through judicial decree of specific relief." *Ameritel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 851, 119 P.3d 624, 626 (2005). One of the recognized exceptions to the mootness doctrine is "the challenged conduct is likely to evade judicial review and thus is capable of repetition." *Id.* at 852, 119 P.3d at 627. The Director issued his 2004 determination on June 28, 2004. The Petitioners timely filed a petition for judicial review, and the district court affirmed the Director's determination by order entered on March 21, 2005. The Petitioners then timely appealed the district court's order. On July 7, 2005, before the agency's record and the clerk's record were filed with this Court, the Director issued his 2005 determination upholding field burning. Thus, this Court could not have heard the appeal from the Director's 2004 determination before he issued his 2005 determination. The law requiring him to make the determination at issue was enacted in 1999. Ch. 378, § 2, 1999 Idaho Sess. Laws 1036, 1037–38. Although the law does not specify the frequency with which the Director is to make the determination, he has done so in 2001, 2003, 2004, and 2005. To hold that a subsequent determination moots a pending appeal from a prior determination would preclude judicial review of the determinations.

The Department asks us to hold, however, that the Petitioners were required to have appealed the 2005 determination in order to preserve their right to challenge the 2004 determination. There is no contention that the 2005 determination alleviated the Petitioner's objections to the 2004 determination. In fact, it incorporated the 2004 determination by reference. The Department simply asks us to dismiss this appeal for the Petitioners' failure to appeal the 2005 determination, even though the filing of such appeal would have been a mere formality that would not have in any way affected the substantive issues presented by this appeal. We decline to do so. We therefore will consider the appeal.

**B.  Was the Director's Determination Arbitrary, Capricious, or an Abuse of Discretion?**

■■■ The Director's determination constitutes "agency action" because it was the performance of a duty placed by law upon the agency. I.C. § 67–5201(3)(c). It was therefore subject to judicial review by the timely filing of a petition for review in the district court. I.C. § 67–5273(3). We review the Director's determination independently of the district court's decision. *Sagewillow, Inc. v. Idaho Dept. of Water Res.*, 138 Idaho 831, 70 P.3d 669 (2003). We cannot substitute our judgment for that of the agency as to the weight of the evidence on questions of fact. *Id.*; I.C. § 67–5279(1). We are required to affirm the Director's determination unless we find that his action was: (a) in violation of constitutional or statutory provisions, (b) in excess of his statutory authority, (c) made upon unlawful procedure, or (d) arbitrary, capricious, or an abuse of discretion. *Purco Fleet Services, Inc. v. Idaho State Dept. of Fin.*, 140 Idaho 121, 90 P.3d 346 (2004); I.C. § 67–5279(2). In this case, Petitioners have challenged the Director's determination solely on the ground that it was arbitrary, capricious, or an abuse of discretion.

■■■ The abuse-of-discretion standard of review does not apply in this case. The Director is not given discretion to decide whether or not to permit field burning. Rather, the statute requires that he make a factual determination—whether or not other economically viable alternatives to burning are available for the three purposes listed in Idaho Code § 22–4803(1). The factual determination controls the result. If he determines that there are no economically viable alternatives, then open burning is an allowable way of disposing of crop residues in the field as long as it is conducted in accordance with other applicable statutes and rules. If

he decides that there are economically viable alternatives, then open burning is not allowable under Chapter 48, Title 22, of the Idaho Code. In either event, the director is not given discretion to make a determination that is contrary to his factual finding. Thus, the issue is whether the Director's determination was arbitrary or capricious. An action is capricious if it was done without a rational basis. *Enterprise, Inc. v. Nampa City*, 96 Idaho 734, 536 P.2d 729 (1975). It is arbitrary if it was done in disregard of the facts and circumstances presented or without adequate determining principles. *Id.*

When the Director made his 2004 determination, the phrase "economically viable alternative" was not defined either by statute or regulation. The Director therefore adopted a definition of the term for the purpose of making his determination. Because the phrase had not been previously defined, the Petitioners initially contended it had been made without adequate determining principles and was therefore arbitrary. In 2005, however, the legislature amended Idaho Code § 22–4802 to add a definition of "economically viable alternative" that mirrored the one adopted by the Director. Ch. 139, § 1, 2005 Idaho Sess. Laws 431. The Petitioners have therefore dropped any claim that the Director's determination was arbitrary based upon the lack of a definition for that phrase. They still challenge the definition, however, based upon the failure to define certain words.

The 2005 amendment to Idaho Code § 22–4802 provides:

"Economically viable alternative" means an alternative to thermal residue disposal that: (a) achieves agricultural objectives comparable to thermal disposal for the factors listed in section 22–4803(1)(a) through (c) and (2), Idaho Code; and (b) allows growers to experience a financial rate of return over the short- and long-term consistent with the rate of return that would occur if thermal residue disposal were utilized.

Petitioners contend that subparagraph (b) of the definition is too vague to provide any standard for applying the statute. They argue, "Respondent fails to define the terms 'rate of return' or 'consistent' as they apply to bluegrass production. Farm commodities in general do not have consistent rates of return within an industry from year to year as input costs and market prices fluctuate significantly."

The financial rate of return is a measure of the return on capital investment, calculated by dividing income by the invested capital. Petitioners correctly point out that farm income fluctuates annually due to market prices. The statute does not speak, however, of a rate of return that is consistent from year to year. That is why it requires the Director to consider both the short-term and the long-term rates of return. Consideration of long-term rates of return is intended to eliminate, to the extent possible, the effect that fluctuating market prices will have on the rate of return. The statute requires the Director to compare the rate of return for Idaho farmers who burn crop residue in their fields with the rate of return they would have if they engaged in the nonthermal disposal of their crop waste to see if those rates of return are consistent, or equal, with each other. If the rate of return for the nonthermal disposal of crop waste equals or exceeds that for crop burning, then crop burning will no longer be allowable.

■ The Petitioners contend that the experience of bluegrass growers in Spokane County, Washington, shows that they are viable alternatives to crop burning. In the mid–1990's, the state of Washington began phasing in a ban on field burning. The Director found that bluegrass farming in Spokane County is similar to that in the ten northern Idaho counties[1] in that both areas have a similar length of growing season, steep farmland terrain, and annual rainfall, and bluegrass producers in both areas grow

---

1. Idaho Code § 22–4803(3) states that there are a great many cereal grain, field grass, forage grass, and turf grass fields in Kootenai, Benewah, Boundary, Bonner, Shoshone, Latah, Clearwater, Nez Perce, Lewis, and Idaho counties, and it requires that growers in those counties register with the Department each year before engaging in field burning and only do so as authorized by the Department.

their crops under a dry land production system due to the lack of available irrigation water. Even though field burning has been banned, bluegrass growers in Spokane County have remained in business, and Petitioners contend that their crop yields are basically the same as they were prior to the burning ban. Petitioners argue, "It is simply common sense that if there are no economically viable alternatives to burning, this would not be possible." "To the extent that a burning ban causes additional costs to growers, it has been proven that it does not put them out of business."

Petitioners' argument misapprehends the standard set by the legislature. Idaho Code § 22-4802(7) does not define "economically viable alternative" as simply meaning an alternative that will allow bluegrass producers a sufficient financial return to remain in business. It requires that the alternatives allow a financial rate of return that is consistent with the present rate of return for producers who dispose of their crop residue by field burning. Petitioners have not pointed to anything in the record showing that the financial rate of return for the nonthermal disposal of crop residue would be the same as that for crop burning.

The Petitioners contend that the Director did not follow the dictates of the statute because he did not calculate any rates of return; he did not calculate the costs of field burning, and he did not calculate the monetary benefits of composting crop residues rather than burning them. Petitioners are correct that the Director did not make these calculations. That does not mean, however, that his determination was arbitrary or capricious. The Director did consider various studies and expert testimony which would have taken those factors into consideration. In his determination, he stated:

A Washington State University Study issued in 2001 estimated the break-even price for Spokane County Kentucky bluegrass producers to be 58 cents per pound when thermal crop residue management was employed versus 84 cents per pound when non-thermal crop residue management practices were utilized. The study concluded that, "under current conditions

in Spokane County, it is estimated that the cost of producing bluegrass seed under the 'no-burn ban' has increased the cost per pound of production by 25¢ or more"—an increase of approximately 43 percent—even where crop residue sold for $31 per ton. An expert witness appearing on behalf of opponents to crop residue burning proffered as a mid-point estimate approximately $55.00 to $60.00 per acre in additional costs for North Idaho Kentucky bluegrass producers if non-thermal crop residue disposal is required. A third study has estimated the increase in production costs accompanying use of non-thermal disposal to be $70 per acre. The administrative record thus indicates that, regardless of which study or testimony is reviewed, rates of return will be reduced significantly for dry land Kentucky bluegrass farmers in Idaho if they are prohibited from using thermal crop residue disposal methods.

■ Petitioners contend that the Director erred by failing to take into consideration environmental and health concerns. They point to the legislative findings and intent contained in Idaho Code § 22–4801, which states in part:

It is the intent of the legislature to promote agricultural activities while at the same time protecting public health.... The legislature encourages the Idaho department of agriculture and the agricultural community to pursue alternative means to crop residue disposal. Nothing in this chapter shall prohibit the Idaho department of environmental quality from enforcing the environmental protection and health act, chapter 1, title 39, Idaho Code, and the rules promulgated pursuant thereto, as they relate to air quality and protection of the state and national ambient air quality standards.

The legislature has not required the Director to consider public health and environmental concerns when making his determination regarding the existence of economically viable alternatives to field burning. Rather, it has sought to lessen those concerns by regulating when growers can engage in crop burning. Idaho Code § 22–4803(2)(a) provides:

In order to minimize impacts upon populated areas of the counties designated in subsection (3) of this section, any person conducting crop residue burning must make every reasonable effort to burn only when weather conditions are conducive to adequate smoke dispersion, and the burning does not emit particulates or other material which exceed the state and federal ambient air quality standards.

In addition, a farmer cannot engage in field burning "without first receiving authorization from the department that the conditions of subsection (2)(a) of this section are met." I.C. § 22–4803(3).

■ Finally, Petitioners contend that the Director's determination was arbitrary because he failed to discuss all evidence in the administrative record and to explain the information that runs counter to his ultimate determination. We have never imposed that requirement upon either a judge in a bench trial or an agency in an administrative proceeding. The administrative record in this case consists of over 3200 pages. It would be needlessly burdensome to require the Director to discuss each document in the record. The Director adequately addressed the factors required by Idaho Code § 22–4803(1). It was his province to decide the weight to be given the various items of evidence. The Petitioners have failed to show that his determination was arbitrary or capricious.

## IV. CONCLUSION

The Director's 2004 determination is affirmed. Costs on appeal are awarded to the respondent.

Chief Justice SCHROEDER and Justices TROUT, BURDICK and JONES concur.