177 P.3d 372

Glenn KOCH, Joyce Chase, Carl Chase, Kathy Alder, Paul Alldredge, Atwell Parry, Gina Lujak, Deloris Cram, Dick Winder and Bob Carpenter, Plaintiffs–Appellants,

v.

CANYON COUNTY, a political subdivision of the State of Idaho; and The Idaho Association of Counties Capital Finance Corporation, a 501(c)(3) non-profit corporation, Defendants–Respondents.

No. 33707.

Supreme Court of Idaho,
Boise, December 2007 Term.

Jan. 25, 2008.

Richard L. Harris, Caldwell, for appellants.

Hon. David L. Young, Canyon County Prosecuting Attorney, Caldwell, for respondent Canyon County. Charles L. Saari, Deputy Prosecuting Attorney, argued.

Moore Smith Buxton & Turcke, Chtd., Boise, for respondent The Idaho Association of Counties Capital Finance Corp. Tammy A. Zokan argued.

EISMANN, Chief Justice.

This is an appeal from a judgment holding that taxpayers of a political subdivision do not have standing to litigate whether the subdivision has incurred indebtedness or liability in violation of Article VIII, § 3, of the Idaho Constitution. We hold that the plaintiffs as taxpayers do have standing, but dismiss the appeal because the issue raised regarding the violation of the constitutional provision has become moot.

## I. FACTS AND PROCEDURAL HISTORY

On March 27, 2006, Canyon County (County) leased from the Arthur J. and Grace L.

Jerome Trust (Trust) a 23.87–acre parcel of real property upon which the County intended to construct a jail and other County facilities. The initial term of the lease was from April 1, 2006 through September 30, 2006. Thereafter it was automatically renewed for twenty-nine, consecutive, one-year terms commencing on October 1 of each year. The County could elect not to renew the lease by not budgeting and appropriating the $150,000 annual lease payment.

On March 27, 2006, the Trust also granted Idaho Association of Counties Capital Finance Corporation (IAC Finance) an option to purchase the real property for the sum of $2,550,000. The term of the option was from October 1, 2006 until April 1, 2016, but it would terminate upon any termination of the lease agreement between the Trust and the County. IAC Finance paid $500,000 for the option from funds provided by the County. The option expressly provided that it could be assigned to the County and that if it was exercised the $500,000 would be applied to the purchase price of the land.

The Plaintiffs are residents of Canyon County and own real property in the county upon which they pay real property taxes. On August 22, 2006, they filed this lawsuit, contending that the lease agreement violated Article VIII, § 3, of the Idaho Constitution. Upon motion of the County, the district court dismissed the case on the ground that the Plaintiffs lacked standing to challenge the lease under Article VIII, § 3. The Plaintiffs then appealed.

While the appeal was pending, the IAC Finance assigned its option to the County. The County then purchased the real property and later sold it. As a result, both the County and IAC Capital contend that this appeal should be dismissed because the case is now moot.

## II. ISSUES ON APPEAL

1. Did the plaintiffs have standing to challenge the lease agreement as violating Article VIII, § 3, of the Idaho Constitution?

2. Should the appeal be dismissed because this case is now moot?

3. Is either the County or IAC Finance entitled to an award of attorney fees on appeal?

## III. ANALYSIS

### A. Did the Plaintiffs Have Standing to Challenge the Lease Agreement as Violating Article VIII, § 3, of the Idaho Constitution?

As a general rule, a citizen or taxpayer, by reason of that status alone, does not have standing to challenge governmental action. "An interest, as a concerned citizen, in seeing that the government abides by the law does not confer standing." *Troutner v. Kempthorne*, 142 Idaho 389, 391, 128 P.3d 926, 928 (2006). "A citizen or taxpayer may not challenge a governmental enactment where the injury is one suffered alike by all citizens and taxpayers of the jurisdiction." *Ameritel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 852, 119 P.3d 624, 627 (2005). The general rule holds even if the citizen or taxpayer alleges some indirect harm from the governmental action.

Thus, in *Young v. City of Ketchum*, 137 Idaho 102, 44 P.3d 1157 (2002), we held that the plaintiffs lacked standing to challenge a services contract between the city and the local chamber of commerce under which chamber agreed to distribute tourist information and promote the area. The city paid for those services from revenues raised by a local option tax. The plaintiffs alleged that they were indirectly injured because: (a) the chamber's activities under the contract would attract visitors and second homeowners, which would drive up the plaintiffs' land values, thereby increasing their real estate taxes; (b) the plaintiffs would ultimately pay the tax because the businesses that were taxed would pass the cost on to their customers; and (c) the money that the city paid to the chamber under the contract would reduce the city's funds available for essential services, causing the city to increase levies against the plaintiffs' properties. We held that the plaintiffs lacked standing because they "do not point to any injury that is not shared alike by all citizens and taxpayers in the City nor have they alleged that the relief request-

ed will prevent or redress the claimed injury." 137 Idaho at 106, 44 P.3d at 1161.

Likewise, in *Greer v. Lewiston Golf & Country Club, Inc.*, 81 Idaho 393, 342 P.2d 719 (1959), we held that the plaintiffs, as electors and taxpayers of the city, lacked standing to challenge an ordinance disannexing a golf course leased by the city. The plaintiffs contended they were injured because the city would lose property taxes paid by the owner of the golf course and liquor license fees paid by the country club at the golf course. In holding that the plaintiffs lacked standing, we concluded, "The insignificant increase in plaintiffs' tax burden, due to the loss of taxes and license fees by reason of the ordinance, is not sufficient to establish their right to maintain this action." 81 Idaho at 398, 342 P.2d at 722.

■ In appropriate circumstances, however, taxpayers do have standing to challenge governmental action. In *Brewster v. City of Pocatello*, 115 Idaho 502, 768 P.2d 765 (1988), the city enacted a tax to pay for street maintenance upon all owners and occupants of real property in the city. The tax owing by each owner or occupant was based upon the traffic generated by that owner's or occupant's property. Even though the city had not sought to enforce the tax against any of the plaintiffs, we held that they had standing to challenge it. A party can also have standing even when the injury is indirect and is shared by a large group. Thus, in *Miles v. Idaho Power Co.*, 116 Idaho 635, 778 P.2d 757 (1989), a ratepayer had standing to challenge the Swan Falls Agreement entered into between Idaho Power Company and the State of Idaho where it was alleged that the Agreement and implementing legislation would impact his power rate. It did not matter that the plaintiff was only one of thousands of power customers. As we stated, "Idaho Power ratepayers are therefore the group most adverse to the agreement, not Idaho Power or the State." 116 Idaho at 642, 778 P.2d at 764.

When deciding whether a party has standing, we have looked to decisions of the United States Supreme Court for guidance. *See, Miles v. Idaho Power Co.*, 116 Idaho at 641, 778 P.2d at 763 (citing *Valley Forge College*

*v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), and quoting from *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), and *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)), and *Bear Lake Education Ass'n, by and through Belnap v. Board of Trustees of Bear Lake School*, 116 Idaho 443, 448, 776 P.2d 452, 457 (1989) (adopting the United States Supreme Court's analysis of associational standing). Like Idaho, the United States Supreme Court has held that as a general rule a taxpayer does not have standing to challenge the expenditure of government monies. "As a general matter, the interest of a federal taxpayer in seeing that Treasury funds are spent in accordance with the Constitution does not give rise to the kind of redressable 'personal injury' required for Article III standing." *Hein v. Freedom From Religion Foundation*, —— U.S. ——, ——, 127 S.Ct. 2553, 2563, 168 L.Ed.2d 424, 438 (2007), *accord, Valley Forge College; Doremus v. Board of Education of Hawthorne*, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952); and *Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).

However, in *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), the Supreme Court carved out a narrow exception against the general prohibition against taxpayer standing. *Hein*, —— U.S. at ——, 127 S.Ct. at 2564, 168 L.Ed.2d at 439. In *Flast*, the Court held that a taxpayer did have standing to challenge a congressional appropriation that violated a specific constitutional limitation upon the congressional taxing and spending power. This Court has also recognized such a rule in *Greer v. Lewiston Golf & Country Club, Inc.*, 81 Idaho 393, 397, 342 P.2d 719, 722 (1959) (citations omitted), when we stated: "Taxpayers have been held qualified to maintain an action to test the validity of a statute or ordinance which increases the tax burden. Generally cases so holding involve an alleged illegal expenditure of public money."

■ The Plaintiffs herein allege that by entering into the lease agreement the County

violated the specific provision in Article VIII, § 3, of the Idaho Constitution prohibiting counties and other subdivisions of the State from incurring any indebtedness or liability, other than for ordinary and necessary expenses, in excess of their income and revenue for the year without voter approval. For over one-hundred years this Court has entertained taxpayer or citizen challenges based upon that constitutional provision. *City of Boise v. Frazier*, 143 Idaho 1, 137 P.3d 388 (2006); *Asson v. City of Burley*, 105 Idaho 432, 670 P.2d 839 (1983); *Reynolds Constr. Co. v. Twin Falls County*, 92 Idaho 61, 437 P.2d 14 (1968); *Schmidt v. Village of Kimberly*, 74 Idaho 48, 256 P.2d 515 (1953); *Lloyd v. Twin Falls Housing Authority*, 62 Idaho 592, 113 P.2d 1102 (1941); *Marsing v. Gem Irrigation Dist.*, 56 Idaho 29, 48 P.2d 1099 (1935); *Straughan v. City of Coeur d'Alene*, 53 Idaho 494, 24 P.2d 321 (1932); *Williams v. City of Emmett*, 51 Idaho 500, 6 P.2d 475 (1931); *Petrie v. Common School Dist. No. 5, in Ada County*, 44 Idaho 92, 255 P. 318 (1927); *Barnard v. Young*, 43 Idaho 382, 251 P. 1054 (1926); *Allen v. Doumecq Highway Dist.*, 33 Idaho 249, 192 P. 662 (1920); *Feil v. City of Coeur d'Alene*, 23 Idaho 32, 129 P. 643 (1912); *Hickey v. City of Nampa*, 22 Idaho 41, 124 P. 280 (1912); *Byrns v. City of Moscow*, 21 Idaho 398, 121 P. 1034 (1912); *Dunbar v. Board of Comm'rs of Canyon County*, 5 Idaho 407, 49 P. 409 (1897). Even though standing is jurisdictional and may be raised at any time, including on appeal, *Beach Lateral Water Users Ass'n v. Harrison*, 142 Idaho 600, 130 P.3d 1138 (2006), this Court has never questioned the standing of a taxpayer to challenge expenditures that allegedly violate Article VIII, § 3.

If this Court were to hold that taxpayers do not have standing to challenge the incurring of indebtedness or liability in violation of that specific constitutional provision, we would, in essence, be deleting that provision from the Constitution. The County acknowledged during oral argument that nobody would have standing. Other than a political subdivision invoking the provision when it does not want to pay for what it has received, *e.g., McNutt v. Lemhi County*, 12 Idaho 63, 84 P. 1054 (1906), there would be nobody who could require that political subdivisions comply with this constitutional provision.

■ Article VIII, § 3, was designed primarily to protect taxpayers and citizens of political subdivisions. *Feil v. City of Coeur d'Alene*, 23 Idaho 32, 49–50, 129 P. 643, 648–49 (1912). They are the ones who would bear the consequences of the subdivision incurring excessive indebtedness. In order to do so, the framers of our Constitution granted the qualified electors of the political subdivision the constitutional right to vote upon whether the subdivision could incur indebtedness or liabilities exceeding its income and revenue for the year. It cannot do so "without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose." It would be an anomaly to hold that those electors do not have standing to challenge the deprivation of their constitutional right to vote. If they do not have standing to protect their constitutional right, who does?

It is not sufficient to simply say that the issue should be left to the political process. With some exceptions, Article VIII, § 3, requires a two-thirds vote of the qualified electors to approve an expenditure, while officials violating the Constitution's spending restraints can retain their positions by a simple majority vote. Thus, leaving the matter to the political process would, in effect, change the required two-thirds vote to a simple majority.

The Idaho legislature has enacted the Judicial Confirmation Law, I.C. §§ 7–1301 *et seq.*, which provides a procedure enabling political subdivisions to obtain a judicial determination of the validity of a proposed obligation. The County recognized that the lease agreement may violate Article VIII, § 3, but elected not to seek a determination of whether it did. Had it done so, the Plaintiffs could have appeared in the proceeding to raise their objections. I.C. § 7–1307.

The United States Supreme Court has held that a taxpayer has standing to challenge a congressional appropriation that violated a specific constitutional limitation upon the congressional taxing and spending power. There is no logical difference between making an appropriation that is specifically prohibited by the Constitution and incurring an

indebtedness or liability that is specifically prohibited by the Constitution. We therefore hold that the Plaintiffs, who are electors and taxpayers of the County, have standing to challenge whether the lease agreement violated Article VIII, § 3.

## B. Should the Appeal Be Dismissed Because this Case Is Now Moot?

 The County and IAC Finance contend that the case is now moot. "An issue becomes moot if it does not present a real and substantial controversy that is capable of being concluded through judicial decree of specific relief." *Ameritel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 851, 119 P.3d 624, 626 (2005). In this case, the lease agreement is no longer in effect. The County purchased the real property, and then sold it. Were we to remand the case to the district court for further proceedings, it could not grant the Plaintiffs any specific relief regarding the lease agreement. We have recognized three exceptions to the mootness doctrine: "(1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest." *Id.* at 851–52, 119 P.3d at 626–27. The Plaintiffs contend that all three exceptions apply in this case.

The first exception applies when the party raising the issue that has become moot has the possibility of collateral legal consequences. The Plaintiffs argue that the County could incur collateral legal consequences if they prevail on their claim, but they do not argue that they have any possibility of incurring collateral legal consequences. Therefore, that exception does not apply.

The second exception is applicable when the challenged conduct is likely to evade judicial review and thus is capable of repetition. Our ruling on standing makes the challenged conduct in this case unlikely to evade judicial review. Therefore, this exception does not apply.

The final exception permits a court to resolve an otherwise moot issue because it raises concerns of substantial public interest. The issue here is whether the particular lease agreement in this case, when considered with the option to purchase and other relevant circumstances, violates the provisions of Article VIII, § 3, of the Idaho Constitution. Whether there are other lease agreements with the same provisions executed in comparable circumstances is not known. The district court has not yet ruled on whether the particular lease agreement in this case violates Article VIII, § 3. Remanding the case for the district court to make that determination when it would not resolve any dispute between the parties in this case would simply be asking the court to make an advisory opinion. Under these circumstances, this third exception does not apply.

## C. Is Either the County or IAC Finance Entitled to an Award of Attorney Fees on Appeal?

 The County and IAC Finance both seek an award of attorney fees on appeal pursuant to Idaho Code § 12–121. "Under that statute, attorney fees will be awarded to the prevailing party when this Court is left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably or without foundation." *Hartman v. United Heritage Property and Cas. Co.*, 141 Idaho 193, 200, 108 P.3d 340, 347 (2005). The County and IAC Finance have not prevailed on the issue that the Plaintiffs appealed.

The County also seeks an award of attorney fees under Idaho Code § 12–117. Under that statute, it would be entitled to an award of attorney fees if it prevailed and the Plaintiffs acted without a reasonable basis in law or fact in bringing the appeal. Since they prevailed on the issue of standing, they did not bring this appeal without a reasonable basis in law or fact.

## IV. CONCLUSION

This appeal is dismissed because the issue raised is now moot. We do not award costs or attorney fees on appeal.

Justices BURDICK, J. JONES, W. JONES and HORTON concur.