# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 43466

| | |
|---|---|
| IN THE MATTER OF THE COMMITMENT OF: JOHN DOE (2015-11) | ) ) ) |
| BARRY McHUGH, in his capacity as the Kootenai County Prosecuting Attorney, | ) ) ) 2016 Unpublished Opinion No. 582 ) |
| Petitioner-Respondent, | ) Filed: June 23, 2016 ) ) Stephen W. Kenyon, Clerk |
| v. | ) ) |
| JOHN DOE (2015-11), | ) THIS IS AN UNPUBLISHED ) OPINION AND SHALL NOT ) BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Carl B. Kerrick, District Judge; Hon. Clark Peterson, Magistrate.

Decision of the district court, on intermediate appeal, affirming the magistrate's dismissal of involuntary commitment proceedings and denial of motion for reconsideration, affirmed.

John M. Adams, Kootenai County Public Defender; Jay Logsdon, Deputy Public Defender, Coeur d'Alene, for appellant.

Barry McHugh, Kootenai County Prosecutor; Barry Black, Chief Deputy Prosecutor, Coeur d'Alene, for respondent.

_____

GUTIERREZ, Judge

John Doe appeals from the district court's decision, on intermediate appeal, affirming the magistrate's order for dismissal of involuntary commitment proceedings and the magistrate's order denying Doe's motion for reconsideration. Specifically, Doe argues the district court erred in affirming the magistrate's dismissal of the petition for involuntary commitment pursuant to Idaho Rule of Civil Procedure 41(a)(1).

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 6, 2014, a suicide evaluation was conducted on Doe while he was an inmate in jail. A clinician requested a psychiatric evaluation and recommended that Doe remain on suicide watch. Doe's attorney contacted the county deputy prosecutor on July 18, 2014, requesting she file a petition for involuntary commitment under Idaho Code § 66-329.[1]

The magistrate entered two orders on July 21, 2014. In its order for temporary custody and designated examination, the magistrate ordered Doe remain in the temporary custody of a treatment/evaluation facility pending evaluation by a designated examiner. Moreover, the magistrate ordered that if the designated examiner finds Doe is mentally ill and is either likely to injure himself or others or is gravely disabled due to mental illness, the prosecutor shall file a petition requesting the patient's detention pending commitment proceedings, pursuant to I.C. § 66-329. In its order for protective custody, transportation, and temporary release, the magistrate ordered Doe be transported from jail to a health center for medical clearance and a designated examination. The magistrate noted that if there was room available at the psychiatric center and Doe did not pose a serious risk to the safety of the staff or property of the health center, Doe could be released to the psychiatric center. On the other hand, the magistrate ordered that if there was no room available in the psychiatric center, or Doe posed a serious risk to the safety of the health center, or the designated examiner determined a petition should not be filed, Doe would be immediately transported back to jail.

On July 22, 2014, the designated examiner determined Doe mentally ill and likely to injure himself. The prosecutor subsequently filed a petition seeking involuntary commitment of Doe on July 24, 2014. The magistrate scheduled a hearing on the matter for July 29, 2014. However, on July 28, 2014, the prosecutor filed a motion to dismiss the petition for involuntary commitment based on the unavailability of a second designated examination. The magistrate dismissed the petition that same day, and Doe was transported back to jail.

Doe moved for reconsideration of the dismissal. During a hearing on the motion, the State explained that it was impossible to complete a second designated examination within the

---

[1]    Under Idaho Code § 66-329, "[p]roceedings for the involuntary care and treatment of mentally ill persons . . . may be commenced by the filing of a written application with a court of competent jurisdiction . . . by a prosecuting attorney . . . ."

time period prescribed by statute.[2]  Thus, the State was unable to meet the requisite burden of proof for its petition.  The magistrate denied Doe's motion for reconsideration, concluding that the State's motion for dismissal operated as a notice of voluntary dismissal under I.R.C.P. 41(a)(1).

Doe appealed from the magistrate's order for dismissal and denial of his motion to reconsider.  Doe argued the magistrate erred in allowing Doe to return to jail after having been found mentally ill and a risk to himself and erred in dismissing the commitment proceedings on the basis of Rule 41(a)(1).  After a hearing on the matter, the district court, on intermediate appeal, declined to evaluate the merits of Doe's claims and affirmed the magistrate's orders.  Doe timely appeals.

## II.

## ANALYSIS

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court.  The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings.  *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013).  If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.  *Id*.  Thus, the appellate courts do not review the decision of the magistrate.  *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012).  Rather, we are procedurally bound to affirm or reverse the decision of the district court.  *Id*.

In his opening brief, Doe argues this case falls within two exceptions to the mootness doctrine.[3]  This Court may dismiss an appeal when it appears that the case involves moot

---

[2]      After an application for commitment has been filed, Idaho Code § 66-329 requires a court to appoint a second designated examiner to make a personal examination of the proposed patient within forty-eight hours upon receipt of the application for commitment.  The designated examiners then have seventy-two hours to report their findings to the court.

[3]      Interestingly, Doe does not address why this case is moot in the first place.  It appears, according to the State's response brief, that the case is moot because the State filed a second petition for involuntary commitment, and Doe was subsequently hospitalized.  However, the

questions. *Downing v. Jacobs*, 99 Idaho 127, 127-28, 578 P.2d 243, 243-44 (1978). A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Goodson v. Nez Perce Cnty. Bd. of Cnty. Comm'rs*, 133 Idaho 851, 853, 993 P.2d 614, 616 (2000). In other words, an issue becomes moot if it does not present a real and substantial controversy that is capable of being concluded through judicial decree or specific relief. *Ameritel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 851, 119 P.3d 624, 626 (2005). Even where a question is moot, there are three exceptions to the mootness doctrine: (1) when there is the possibility of collateral legal consequences imposed upon the person raising the issue; (2) when the challenged conduct is likely to evade judicial review, and thus is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest. *Koch v. Canyon Cnty.*, 145 Idaho 158, 163, 177 P.3d 372, 377 (2008); *Ameritel Inns, Inc.*, 141 Idaho at 851-52, 119 P.3d at 626-27.

Doe contends the last two exceptions to the mootness doctrine apply in this case. He first argues that the courts have not decided the issue of whether an inmate may be returned to jail after a designated examiner determines the inmate is mentally ill and likely to injure himself, and such issue is likely to continue to evade judicial review and thus is capable of repetition. This exception has two elements: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). Under the second prong, there must be a "demonstrated probability" or "reasonable expectation," not merely a physical or theoretical possibility, that the complaining party will be subjected to the same action. *Id.* For instance, in *Shrader v. Granniger*, 870 F.2d 874, 877 (2d Cir. 1989), a plaintiff had been involuntarily committed to a facility over 160 times. The court held that the plaintiff's cause of action challenging the involuntary commitment procedures was not moot because there was a likelihood that he would again be subjected to commitment procedures. *Id.*

Here, the challenged action was indeed too short to be fully litigated prior to its cessation or expiration. Once a petition for involuntary commitment is filed, the court has forty-eight

---

record is incomplete and does not establish these facts. Doe fails to concede or contest these facts by avoiding setting forth why this case is moot.

hours to appoint a second designated examiner and, after that appointment, both designated examiners have seventy-two hours to report their findings. I.C. § 66-329(4). The court then has seven days to conduct a hearing on the matter or up to an additional fourteen days for good cause shown. I.C. § 66-329(6). Thus, involuntary commitment proceedings are short-natured. However, there is no reasonable expectation that Doe would be subjected to the same action again. Nothing in the record indicates that, aside from the current action, a petition for the involuntary commitment of Doe has ever been dismissed due to the unavailability of a second designated examiner. Nor are there any indications that Doe will likely need a second designated examination in the future and such examination will likely be unavailable when needed. Doe's case is therefore distinguishable from *Shrader*, where there was an obvious likelihood that the plaintiff would be subjected to the same action again. This exception--the likelihood the challenged conduct will evade judicial review, and thus is capable of repetition--does not apply here.

Doe next maintains that issues pertaining to the involuntary commitment of individuals suspected of being mentally ill are of substantial public interest. In support of his argument, Doe cites to *Bradshaw v. State*, 120 Idaho 429, 432, 816 P.2d 986, 989 (1991), which stated that "several courts have addressed the mootness question in the context of reviewing involuntary commitments and have concluded that public interest concerns warrant a review on the merits." However, the Court limited its holding: "We agree and hold that the issue of whether individuals will be required to receive medication against their will while committed is of similar public interest and concern." *Id.* Here, Doe does not argue he was forced to receive medication against his will. Doe does not provide further support for this argument, and we are unable to find support in our research. Moreover, Doe maintains that the public has a substantial interest in protecting mentally ill individuals from being harmed. Here, the first designated examination that found Doe mentally ill was not conclusive--that first examination was merely one of the two required designated examinations and part of a larger assessment. Indeed, I.C. § 66-329(4) requires a court to "appoint two (2) designated examiners to make individual personal examinations of the proposed patient." The district court's dismissal of the petition for involuntary commitment therefore does not implicate the protection of the mentally ill because Doe was not yet found to be mentally ill by two designated examinations. This exception--when

5

an otherwise moot issue raises concerns of substantial public interest--therefore does not apply. Neither of the exceptions that Doe sets forth applies to his case.

Even if a mootness exception applied, the district court did not err in affirming the magistrate's dismissal of the petition for involuntary commitment because Rule 41(a)(1) governs and permits the voluntary dismissal. Doe argues the district court erred because Idaho Code Title 66, Chapter 3, exclusively governs the dismissal of involuntary commitment proceedings, and various sections of Idaho Code Title 66, Chapter 3, prohibit the dismissal of the proceedings. For instance, Doe notes that the last sentence of I.C. § 66-329(5) prohibits proposed patients from being detained in jail if a designated examiner's certificate states a belief that the proposed patient is mentally ill and likely to injure himself. Since the first designated examination found Doe to be mentally ill and likely to injure himself, Doe maintains the court was not permitted to send Doe back to jail by dismissing the involuntary commitment proceedings. But statutory provisions should not be read in isolation. *Flying Elk Inv., LLC v. Cornwall*, 149 Idaho 9, 15, 232 P.3d 330, 336 (2010). Rather, they should be interpreted in the context of the entire document. *Id.* In reading the entirety of I.C. § 66-329(5), the statute prohibits proposed patients from being detained in nonmedical units used for punishment while the proposed patient "await[s] [a] hearing."[4] The statute does not address Doe's situation, where the State withdrew its petition for involuntary commitment before the scheduled hearing. A hearing is no longer necessary upon dismissal.

Next, I.C. § 66-329(4) permits a court, in its discretion, to terminate the involuntary commitment proceedings if the designated examiners find that the proposed patient is not mentally ill or, even if he is mentally ill, is not likely to injure himself or others. Since the first designated examiner did not make such a finding in Doe's case, nor did a second designated

---

[4] The entirety of Idaho Code § 66-329(5) reads:

> If the designated examiner's certificate states a belief that the proposed patient is mentally ill and . . . likely to injure himself . . . the judge of such court shall issue an order authorizing any health officer, peace officer, or director of a facility to take the proposed patient to a facility in the community in which the proposed patient is residing or to the nearest facility to await the hearing and for good cause may authorize treatment during such period subject to the provisions of section 66-346(a)(4), Idaho Code. Under no circumstances shall the proposed patient be detained in a nonmedical unit used for the detention of individuals charged with or convicted of penal offenses.

6

examination conflict with the first examination, Doe contends the district court erred by affirming the magistrate's dismissal of the proceedings. However, Doe reads the statute too broadly. Idaho Code § 66-329(4) does not state the court may *only* dismiss when the patient is either not mentally ill or not likely to injure himself or others. Rather, I.C. § 66-329(4) allows a court to dismiss the proceedings upon specific findings by the designated examiners. Such findings were not made in Doe's case. Thus I.C. § 66-329(4), specifically the language regarding dismissals, is unhelpful. Idaho Code § 66-329(4) does not preclude the court from dismissing involuntary commitment proceedings when the petitioner withdraws the petition.

Doe further contends the district court erred in dismissing the involuntary commitment proceedings because, pursuant to I.C. § 66-350, "no patient with respect to whom proceedings for judicial commitment have been commenced shall be released or discharged during the pendency of such proceedings unless ordered by the court or a judge thereof upon the application of the patient, or his legal guardian, parent, spouse, or next of kin . . . ." Since neither Doe nor anyone else other than the State petitioned for release or discharge, Doe maintains the court erred in returning Doe to jail. However, I.C. § 66-350 does not address voluntary dismissals initiated by the petitioner. Nor does I.C. § 66-350 supplement or conflict with Rule 41(a)(1), which governs voluntary dismissals initiated by civil plaintiffs. In fact, no section within Idaho Code Title 66, Chapter 3, addresses voluntary dismissals initiated by the petitioner. As Doe notes, it is true that a specific statute controls over a more general statute when there is a conflict between the two or when the general statute is vague or ambiguous. *Tuttle v. Wayment Farms, Inc.*, 131 Idaho 105, 108, 952 P.2d 1241, 1244 (1998). Because Idaho Code Title 66, Chapter 3, is silent on the matter, and because this is a civil proceeding, Rule 41(a)(1) governs voluntary dismissals of involuntary commitment proceedings. The district court did not err in affirming the magistrate's dismissal of Doe's involuntary commitment proceedings pursuant to Rule 41(a)(1). Additionally, the district court did not err in affirming the magistrate's denial of Doe's motion for reconsideration.

## III.

### CONCLUSION

Doe's case is moot because the mootness doctrine exceptions do not apply. Even if an exception applied, the district court did not err in affirming the magistrate's order for dismissal of involuntary commitment proceedings pursuant to Rule 41(a)(1) and the magistrate's order

7

denying Doe's motion for reconsideration. We therefore affirm the district court's decision on intermediate appeal.

Chief Judge MELANSON and Judge HUSKEY **CONCUR**.