IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 36605

GEORGE MARTIN and MARTIN CUSTOM )
HOMES, LLC, )
)
    Plaintiffs-Appellants, )
)
v. )
)
CAMAS COUNTY, IDAHO, by and through )
the duly elected BOARD OF )
COMMISSIONERS in their official capacity, )
KEN BACKSTROM, BILL DAVIS, and )
RON CHAPMAN, )
)
    Defendants-Respondents. )

Boise, January 2011 Term

2011 Opinion No. 22

Filed: February 17, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Camas County. Hon. John K. Butler, District Judge.

District court grant of summary judgment, affirmed.

The Simms Law Firm, Hailey, for appellants. Christopher P. Simms argued.

Moore, Smith, Buxton and Turcke Chtd., Boise, for respondents. Paul J. Fitzer argued.

———————————————————

BURDICK, Justice

This case comes before this Court from the district court's grant of summary judgment in favor of Camas County, on the basis that George Martin and Martin Custom Homes, LLC (collectively "Martin"), lacked standing to bring a declaratory judgment action against Camas County to challenge the validity of various planning and zoning ordinances and regulations. Martin argues that the district court committed prejudicial error in failing to take judicial notice of orders entered in a related case (CV-2007-24) challenging substantially identical amended zoning ordinances, wherein the district court found that Martin had standing. Martin also argues that the district court erred in finding that Martin lacked standing where Martin owned, or held interests in, properties that were either rezoned or adjacent to properties which were rezoned, cumulatively having a negative fiscal impact on Martin. We affirm, holding that Martin has failed to show a distinct palpable injury.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

**A. CV-2007-24 (currently awaiting hearing before this Court as Case No. 36055-2009)**

In late 2005 the Camas County Board of Commissioners ("the Board") instructed the Camas County Planning and Zoning Commission ("the Commission") to amend the Camas County Zoning Ordinance and rezone certain areas of the county. The Commission submitted an Amended Comprehensive Plan (Resolution 96) with an amended Land Use Map (Resolution 103) and an Amended Zoning Ordinance (Ordinance 153) with an amended Zoning Map (Ordinance 150) (collectively, the "2007 zoning amendments") to the Board, which subsequently adopted them. On May 4, 2007, Martin filed a declaratory judgment action against Camas County, seeking a permanent injunction of the 2007 zoning amendments.

On December 28, 2007, the district court granted preliminary injunctive relief to Martin. The district court found, *inter alia*, that: (1) the Idaho Administrative Procedures Act (IDAPA) applied to Camas County's zoning decisions; (2) the action of the County—in enacting the 2007 zoning amendments—constituted a quasi-judicial, rather than quasi-legislative, activity and was not immune from judicial review; and (3) the County failed to maintain a transcribable verbatim record, as required by I.C. § 67-6536. On March 10, 2008, the district court amended the previously entered injunction to also prohibit the County from proceeding under the zoning ordinances that had preceded Ordinance 153. On April 2, 2008, the court entered a separate order of preliminary injunction on the basis that conflicts of interest existed at both the planning and zoning and county commissioner levels, in violation of I.C. § 67-6506.

On May 12, 2008, the Board adopted a new Amended Comprehensive Plan (Resolution 114) and Land Use Map (Resolution 115) as well as a new Zoning Ordinance (Ordinance 157) and a Zoning Designation Map (Ordinance 158) (collectively the "2008 zoning amendments"). On August 8, 2008, Martin requested to amend his complaint to include claims for damages under Section 1983 of the Civil Rights Act and an additional declaratory relief action for the 2008 zoning amendments. On October 8, 2008, the district court granted Martin's request to amend his complaint to include Section 1983 claims, but denied the motion as to the 2008 zoning amendments.

On November 5, 2008, Camas County removed CV-2007-24 to the United States District Court for the District of Idaho ("USDCDI"), pursuant to 28 U.S.C. §§ 1441(b), 1446(b), divesting the district court of jurisdiction. On December 3, 2008, the district court entered its

Findings of Fact, Conclusions of Law and Order Following Trial granting Martin's requested relief as to the 2007 zoning amendments. On May 17, 2009, the USDCDI remanded CV-2007-24 back to the district court. On May 27, 2009, the district court recognized that it had been divested of jurisdiction prior to entering its order on December 3, 2008, and was not re-vested until the USDCDI issued an order of remand. The district court accordingly reissued its December 3 order on May 27, 2009.

**B. CV-2008-40 (the present matter, before this Court as Case No. 36605-2009)**

On October 15, 2008, Martin filed a Complaint for Declaratory Judgment, seeking both preliminary and permanent injunctions of the 2008 zoning amendments. The district court denied the preliminary injunction on November 10, 2008, finding that Martin had not shown that he had suffered or would suffer irreparable injury in the event that the court did not enter the injunction. Camas County filed a motion for summary judgment on February 12, 2009, which the district court granted on May 6, 2009, finding that Martin lacked standing to bring a complaint for declaratory judgment. Martin filed his notice of appeal with this Court on June 15, 2009.

The parties stipulated before the district court that Martin owned the following property in Camas County:

(1) A forty acre parcel that was zoned as Agricultural ("A")—allowing one residential unit per eighty acres—both before and after the 2007 and 2008 zoning amendments.[1]

(2) A twenty-nine acre parcel that was zoned A prior to the 2007 and 2008 zoning amendments, and zoned Residential ("R1")—allowing one residential unit per acre—after.

(3) A one acre parcel consisting of three lots in an existing, approved and platted subdivision, which was zoned as Agricultural Transitional ("AT")—allowing one residential unit per acre—prior to the 2007 and 2008 zoning amendments and zoned R1, allowing the same residential density, after.

However, since the time of that stipulation Martin has sold the one acre parcel located in the platted subdivision. At oral argument before this Court counsel for Martin notified this Court

---

[1] The 2008 zoning amendments superseded the 2007 zoning amendments, which the district court declared invalid in CV-2007-24; however many of the changes in zoning or designation (on the planning map) that occurred under the 2008 zoning amendments had also occurred under the 2007 zoning amendments. It is therefore most correct to discuss the condition of zoning and planning designations before both the 2007 and 2008 zoning amendments and the condition of the same after.

for the first time that Martin no longer owns the twenty-nine acre parcel. Best practice is to notify this Court in writing, in a timely fashion, when changes that may affect justiciability occur in the factual circumstances of a case. As it stands now, Martin owns only the forty acre parcel in fee simple which was zoned A both before and after the 2007 and 2008 zoning amendments; however, the parcel's designation on the Comprehensive Plan Land Use Map was changed from AT to A.

In addition to the property that Martin owns in fee simple, Martin holds contractual interests in the following:

(1) Two eighty acre parcels in which Martin holds contractual rights for development, marketing and building. The northern parcel's zoning designation did not change with the 2008 zoning amendments; the southern parcel was rezoned from A to R1.

(2) A sixty-seven acre parcel to which Martin holds the right of first refusal was rezoned from A to R1.

These three properties were given an "R7" designation (allowing seven residential units per acre) on the Comprehensive Plan Land Use Map prior to the 2007 and 2008 zoning amendments, and an R1 designation afterward.

## II. STANDARD OF REVIEW

As noted in *Castorena v. General Electric*:

> When reviewing an order for summary judgment, the standard of review for this Court is the same as that used by the district court in ruling on the motion. Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. This Court exercises free review over questions of law.

149 Idaho 609, __, 238 P.3d 209, 213 (2010) (quoting *Vavold v. State*, 148 Idaho 44, 45, 218 P.3d 388, 389 (2009)). The party seeking summary judgment has the burden of proving the absence of material facts, but the non-moving party cannot rest upon mere allegations and denials. *Baxter v. Craney*, 135 Idaho 166, 170, 16 P.3d 263, 267 (2000). The non-moving party must set forth specific facts that show a genuine issue for trial. *Id.*

4

### III. ANALYSIS

Martin argues that the district court erred in granting summary judgment in favor of Camas County because it incorrectly determined that Martin lacked standing to bring a declaratory judgment action seeking to question the validity of the 2008 zoning amendments. Martin contends that: (1) the district court erred in not taking judicial notice of the orders entered in Case No. CV-2007-24, and if the court had taken judicial notice of these orders, the doctrine of collateral estoppel would have prevented the court from reaching the issue of standing; (2) Martin owned property intended for development that was rezoned as a result of the 2008 zoning amendments, and property adjacent to Martin's property was also rezoned, resulting in a negative fiscal impact on Martin, and as such the district court erred in finding that Martin failed to demonstrate a specific and personal injury and, consequently, did not have standing. These issues shall be addressed in turn.

**A. Standing is a jurisdictional issue, not an adjudicative fact that a court may take judicial notice of.**

Martin argues that the district court was required to take judicial notice of the orders entered in CV-2007-24, under I.R.E. 201. Idaho Rule of Evidence 201 is titled "Judicial notice of adjudicative facts" and provides, *inter alia*:

> **(a) Scope of rule**. This rule governs only judicial notice of adjudicative facts.
> **(b) Kinds of facts**. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
> . . .
> **(d) When mandatory**. When a party makes an oral or written request that a court take judicial notice of records, exhibits or transcripts from the court file in the same or a separate case, the party shall identify the specific documents or items for which the judicial notice is requested or shall proffer to the court and serve on all parties copies of such documents or items. A court shall take judicial notice if requested by a party and supplied with the necessary information.

The district court noted that Martin had requested that it take judicial notice of decisions and orders entered in CV-2007-24, and wrote "[t]his court declines to take judicial notice of those proceedings, but it would appear to this court that the issue of 'standing' was not directly addressed in those prior proceedings."

Martin requested that the district court take judicial notice of:

> the proceedings commenced in . . . CV-2007-24, on May 4, 2007 upon which the Court issued *Findings of Fact, Conclusions of Law and Order Following Trial*,

that incorporated Preliminary Injunctions entered on December 28, 2007 and April 2, 2009, titled *Decision on Requirements of a "Transcribable Record" and Other Records* and *Decision on Conflict of Interests Issue*.

The three specifically referenced documents were attached to Martin's Statement of Material Fact as exhibits.

To the extent that Martin's request can be read as requesting that the district court take judicial notice of the general proceedings in CV-2007-24, that request did not comply with I.R.E. 201(d), as that Rule requires the requesting party to identify the specific documents or items for which judicial notice is requested. However, drawing reasonable inferences in Martin's favor, we view this as a request that the district court take judicial notice of the adjudicative facts contained in the three CV-2007-24 documents that were attached to his Statement of Material Fact.[2] *See Castorena*, 149 Idaho at __, 238 P.3d at 213.

An "adjudicative fact" is "[a] controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties. For example, adjudicative facts include those that the jury weighs." Black's Law Dictionary 669 (9th ed. 2009). Where a plaintiff does not have standing it cannot be said that the "case or controversy" requirement has been satisfied; therefore the judiciary lacks jurisdiction to hear the case. *See Koch v. Canyon County*, 145 Idaho 158, 162, 177 P.3d 372, 376 (2008) (noting that "standing is jurisdictional and may be raised at any time"). Jurisdictional issues, such as standing, are questions of law, *see Christian v. Mason*, 148 Idaho 149, 151, 219 P.3d 473, 475 (2009), and are, therefore, not adjudicative facts of which a court may properly take judicial notice. As such, even if the court in CV-2007-24 had reached a clear determination on the issue of standing, which it never expressly did, the district court in the case at hand would have been free to reach its own independent determination.

---

[2] One of the documents that Martin requested the district court take judicial notice of was the December 3, 2008, Findings of Fact, Conclusions of Law and Order Following Trial ("12/3/08 Order"). At the time that the 12/3/08 Order was entered, the district court in CV-2007-24 had been divested of jurisdiction by the removal of the case to federal court, and had no authority to issue an order in the case. The CV-2007-24 district court recognized this when it reissued the order on May 27, 2009, after the USDCDI remanded the case to its jurisdiction. The 12/3/08 Order had been improperly issued, and the district court in the present case entered its order on the summary judgment motion on May 6, 2009, before the district court in CV-2007-24 reissued the 12/3/08 Order. As such, the 12/3/08 Order was not subject to mandatory judicial notice under I.R.E. 201(d).

6

**B. The district court correctly determined that Martin lacked standing to bring a declaratory judgment action.**

Title 10, chapter 12 of the Idaho Code is titled the "Uniform Declaratory Judgment Act" and provides authority for courts of record to declare rights, status and other legal relations. *See* I.C. §§ 10-1201, 10-1216. Idaho Code § 10-1202 provides, *inter alia*: "Any person . . . whose rights, status or other legal relations are affected by a . . . municipal ordinance . . . may have determined any question of construction or validity arising under the . . . ordinance . . . and obtain a declaration of rights, status or other legal relations thereunder." "[T]he [Uniform] Declaratory Judgment Act does not relieve a party from showing that it has standing to bring the action in the first instance." *Schneider v. Howe*, 142 Idaho 767, 772, 133 P.3d 1232, 1237 (2006).

In *Young v. City of Ketchum*, this Court noted:

> It is a fundamental tenet of American jurisprudence that a person wishing to invoke a court's jurisdiction must have standing. Standing is a preliminary question to be determined by this Court before reaching the merits of the case. The doctrine of standing is a subcategory of justiciability. As this Court has previously noted, the doctrine is imprecise and difficult to apply. Standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated. To satisfy the case or controversy requirement of standing, a litigant must allege or demonstrate an injury in fact and a substantial likelihood the relief requested will prevent or redress the claimed injury. This requires a showing of a distinct palpable[3] injury and fairly traceable causal connection between the claimed injury and the challenged conduct. But even if a showing can be made of an injury in fact, standing may be denied when the asserted harm is a generalized grievance shared by all or a large class of citizens.

137 Idaho 102, 104–105, 44 P.3d 1157, 1159–1160 (2002) (internal citations and quotations omitted).

It must first be determined whether Martin has shown that he has suffered, or will suffer, a distinct palpable injury that is fairly traceable to Camas County's actions in passing the 2008 zoning amendments. *See Harris v. Cassia Cnty.*, 106 Idaho 513, 516–17, 681 P.2d 988, 991–92 (1984) ("[T]he right sought to be protected by a declaratory judgment may invoke either remedial or preventive relief; it may relate to a right that has either been breached or is only yet in dispute or a status undisturbed but threatened or endangered . . . .").

Martin states that he:

---

[3] "Palpable" is defined as "[e]asily perceptible, plain, obvious, readily visible, noticeable, patent, distinct, manifest." Black's Law Dictionary 1110 (6th ed. 1990).

does not complain that he is harmed solely because of the location of his land in a new comprehensive land use designation he may suffer some future harm, but that he has suffered an immediate negative fiscal impact because of the actual rezoning of his property and adjacent lands. More specifically, Mr. Martin does allege that the value of the property in which he has an interest is reduced in value by the 2008 [zoning] amendments; will suffer decrease in available services; increase in taxes; and prevent him from developing the land as he would have been able under the pre-existing zoning schematic.

None of the parcels that Martin owns—or holds contractual interests in—were downzoned as a result of the 2008 zoning amendments. Martin's argument concerning the palpable harm he has suffered seems to be that: (1) the upzoning of property Martin has no interest in, which is located in Camas County, decreases the value of the property that Martin owns or holds an interest in; and (2) the 2008 zoning amendments prevent Martin from developing the properties he owns, or in which he holds an interest, in the same manner that he would have been able to prior to the 2007 and 2008 zoning amendments.

Martin cites to no authority in support of his argument that a comprehensive county-wide change in zoning designations (wherein some parcels of land receive a higher zoning density classification than they previously enjoyed) constitutes an injury to a property owner, absent some resultant specific and traceable harm. Martin argues that the upzoning of approximately 20,000 acres of property in Camas County will decrease the value of his property for development, because of the increase in supply. Martin contends that *Ameritel Inns, Inc. v. Greater Boise Auditorium District*, 141 Idaho 849, 119 P.3d 624 (2005), stands for the proposition that an increase in competition may constitute a particularized injury.

In *Ameritel*, the Greater Boise Auditorium District ("Auditorium District") sought to expand a convention center it owned and to issue bonds to finance that expansion. 141 Idaho at 850–51, 119 P.3d at 625–26. AmeriTel Inns, Inc. ("Ameritel"), the owner of three hotels (portions of which Ameritel rented out for use in conventions) within the geographic boundaries of the area that the Auditorium District operated in, sought a declaratory judgment that the Auditorium District's expenditure of public funds to advocate for voter approval of the proposed bonds violated State law. *Id.* at 851, 119 P.3d at 626. Additional qualified electors who resided within the operating area of the Auditorium District joined in Ameritel's action. *Id.* The district court found that none of the plaintiffs had standing to bring the declaratory judgment action. *Id.* at 852, 119 P.3d at 627. This Court confirmed that those plaintiffs who were mere voters who opposed the bond did not have standing, as they had failed to show a particularized distinct

8

palpable injury. *Id.* However, this Court found that Ameritel, as a taxpayer that alleged that its business would be negatively impacted by the increased competition, and most importantly, would have to pay increased taxes to support the expansion if the bond proposal passed, had standing. *Id.* at 853, 119 P.3d at 628.

Martin argues that he, like Ameritel, will suffer from increased competition if Camas County's 2008 zoning amendments are permitted to stand, and, therefore, has standing. The facts in *Ameritel* are distinguishable. Focusing on increased competition, Martin fails to note that there were two other factors that aggregated to provide standing in *Ameritel*: (1) Ameritel's status as a taxpayer whose tax funds were being used to advocate in favor of approving the bond, and (2) the *imminent and certain* increase in the taxes Ameritel would be subjected to if the bond were passed. Martin's purported injuries are thoroughly speculative and cannot be said to be specific or distinct and palpable. This Court has never held that increased competition alone is sufficient to confer standing.

Martin next argues that the proximity between the properties he holds an interest in and other parcels which were upzoned results in an injury. In *Butters v. Hauser*, Butters sought a declaratory judgment that a newly enacted Latah County zoning ordinance was void. 131 Idaho 498, 499, 960 P.2d 181, 182 (1998). Latah County had adopted a new ordinance, repealing the existing ordinance that governed conditional use permits, and Hauser obtained a special use permit under the new ordinance. *Id.* Hauser's conditional use permit allowed him to build a radio transmission control tower, and Butters alleged that the tower loomed over Butters's nearby land and required her to install an expensive new telephone system in order to eliminate the radio tower's electrical interference. *Id.* at 501, 960 P.2d at 184. The district court granted summary judgment in favor of Hauser, finding that Butters's injuries—although arguably palpable—were not unique to her. *Id.* at 500, 960 P.2d at 183. In reversing the district court, this Court clarified that "[a]lthough the location of [Butters's] property alone does not confer standing, the location does expose her to peculiarized harm." *Id.* at 501, 960 P.2d at 184. The *Butters* Court concluded that Butters had "shown a peculiarized harm as a result of the conditional use permit which was issued pursuant to the new appeal procedure prescribed by the ordinance amendment in question. Thus, we conclude that Butters does have standing to pursue a declaratory judgment action regarding the validity of the ordinance amendment." *Id.*

9

Martin argues that the reasoning of *Butters* should be applied to his situation, since he is in the business of land development and property near the property that he owns was upzoned, while Martin's was not. This argument is unpersuasive; the plaintiff in *Butters* alleged that she suffered specific and palpable harm as a result of a conditional use permit that was issued under the challenged zoning ordinance. Martin has failed to show that he has suffered or is likely to suffer any injury; he merely speculates that increased competition will decrease the future value of his property. Martin states that "Martin, like Butters owns land that suffers a distinct injury, unlike that of the public generally", but fails to explain what that distinct injury is, merely offering an argument that Martin's property is "uniquely situated". Martin offers no argument that any neighboring properties which have been upzoned are being developed in such a way that Martin will be injured.

Martin next argues that even if the injury he suffers is generalized to a large group of landowners in Camas County he still has standing to bring suit. In *Miles v. Idaho Power Co.*, Miles, a customer and ratepayer of Idaho Power, brought a declaratory judgment action, challenging the constitutionality of legislation enacted as a result of an agreement entered into by Idaho Power and the State. 116 Idaho 635, 637, 778 P.2d 757, 759 (1989). That legislation prevented the Idaho Public Utilities Commission (the "IPUC") from considering whether Idaho Power could or should have done something to maintain and protect its full water rights, contrary to what it did in entering the agreement. *Id*. at 637–38, 778 P.2d at 759–60. Miles argued that this legislation would effectively force Idaho Power ratepayers to pay for equipment that was rendered useless due to the agreement (turbines that would not be required under the agreed-upon decrease in the rate flow of water going to hydroelectric facilities), by preventing the IPUC from taking into consideration that the equipment was no longer necessary. *Id*. at 638, 778 P.2d at 760. The Court found that Miles did have standing, as the ratepayers and customers of Idaho Power, injured by the legislation, did not constitute the entirety of Idaho citizens or tax payers. *Id*. at 642, 778 P.2d at 764. The Court reasoned that:

> This is more than a generalized grievance. It is a specialized and peculiar injury, although it may affect a large class of individuals. The political process obviously will be more unkind to injured ratepayers seeking to change legislation affecting the whole state of Idaho than to injured citizens and taxpayers. When the impact of legislation is not felt by the entire populace, but only by a selected class of citizens, the standing doctrine should not be evoked to usurp the right to challenge the alleged denial of constitutional rights in a judicial forum.

*Id.* Therefore, while in *Miles* this Court found standing where a large class of individuals were harmed, that harm was still particularized. *Miles* provides no exception to the particularized grievance requirement that must be demonstrated in order to have standing.

In *Koch*, the plaintiffs sought a judicial determination that Canyon County had entered into a lease agreement that violated Article VIII, section 3, of the Idaho Constitution. 145 Idaho at 160, 177 P.3d at 374. The district court found that the plaintiffs—as residents, property owners and tax payers—did not have standing to challenge the lease. *Id.* On appeal, this Court noted that "[a]s a general rule, a citizen or taxpayer, by reason of that status alone, does not have standing to challenge governmental action." *Id.* However, "[i]n appropriate circumstances . . . taxpayers do have standing to challenge governmental action." *Id.* at 161, 177 P.3d at 375. This Court noted that the United States Supreme Court had carved out a narrow exception to the general prohibition against taxpayer standing in *Flast v. Cohen*, 392 U.S. 83 (1968), in situations where a taxpayer argues that the government violates a specific constitutional limitation on congressional taxing and spending. *Id.* In certain situations, if a taxpayer is not deemed to have standing to challenge violations of specific constitutional limitations on government action, it would have the effect of deleting such a provision from the Constitution. *Koch,* at 162, 177 P.3d at 376. This Court found that "[t]here is no logical difference between making an appropriation that is specifically prohibited by the Constitution and incurring an indebtedness or liability that is specifically prohibited by the Constitution" and held that, therefore, the district court had erred in determining that the plaintiffs in *Koch* lacked standing to bring suit. *Id.* at 162–63, 177 P.3d at 376–77. The parties agreed that other than taxpayers no person had standing. If no party was held to have standing the constitutional provision would effectually be deleted, as violations of that provision would be beyond judicial review. *Id.* at 162, 177 P.3d at 367. Therefore, our holding in *Koch* was that electors "have standing to challenge the deprivation of their constitutional right to vote" on a proposed governmental action incurring an indebtedness or liability governed by Art. VIII § 3 of the Idaho Constitution. *Id.* at 162, 177 P.3d at 376.

Martin has cited to no cases where taxpayer or ratepayer standing has been granted for a challenge grounded in statute rather than a constitutional provision. Furthermore, the exception developed in *Koch* has only been applied where failure to find that the appellants in question had standing would have resulted in no party having standing. Here, a party whose property had been downzoned by the 2008 zoning amendments would unquestionably have standing to bring

11

this action, as would a property owner who could show a specific palpable harm that he would incur from the imminent development of an upzoned neighboring property. Therefore, even if the upzoning of property in Camas County could be found to constitute a generalized injury to some of the remaining property owners that generalized grievance does not confer standing to sue under the *Koch* exception.

Martin has not pled facts to support his contention that he cannot develop his properties in the same manner that he could have prior to the 2007 and 2008 zoning amendments. As noted above, none of the properties that Martin holds an interest in were downzoned as a result of the 2008 zoning amendments. The designation on the Comprehensive Plan Land Use Map was changed for the three parcels that Martin holds an interest in, from R7 to R1, and the forty acre property that he owns had its planning map designation changed from AT to A. However, Martin has failed to cite any authority in support of the proposition that a residential density designation in a comprehensive plan creates a vested or enforceable property right.

In *Bone v. City of Lewiston*, 107 Idaho 844, 693 P.2d 1046 (1984), this Court noted that a comprehensive plan does not provide that a landowner is entitled to have his property zoned in a certain way, or even that the use indicated in the plan is the appropriate present use for the property; it is merely a projection of what will be appropriate in the future. *Id*. at 850, 693 P.2d at 1052. This Court holds that the use or residential density designation of property in a comprehensive plan creates no present right or enforceable expectation that the property will ever be zoned in accordance with the comprehensive plan.

## C. Attorney Fees

In the section of its brief dedicated to Issues Presented on Appeal, Camas County requests attorney fees under I.C. § 12-117 and I.A.R. 40 and 41, arguing that Martin brought his appeal without a reasonable basis in fact or law.

Idaho Appellate Rule 35(b) reads, *inter alia*, as follows:

**Respondent's Brief**. The brief of the respondent shall contain the following divisions under appropriate headings:
. . .
(5) **Attorney Fees on Appeal**. If the respondent is claiming attorney fees on appeal the respondent must so indicate in the division of issues on appeal that respondent is claiming attorney fees and state the basis for the claim.
(6) **Argument**. The argument shall contain the contentions of the respondent with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon.

12

Camas County fails to mention the issue of attorney fees in the Argument section of its brief, as such that request shall not be considered. *See McVicker v. City of Lewiston*, 134 Idaho 34, 38, 995 P.2d 804, 808 (2000) ("The [appellants] requested attorney fees and costs on appeal in their statement of issues on appeal. The [appellants] did not, however, address the request in the argument section of their brief as required by I.A.R. 35(a)(6). The Court therefore declines to consider an award of fees."). In addition, counsel for Camas County withdrew its request for attorney fees at oral argument.

## IV. CONCLUSION

As standing is a jurisdictional issue, not subject to collateral estoppel, we find that any error the district court committed in failing to take judicial notice of documents from case CV-2007-24 was necessarily harmless. We affirm the district court's grant of summary judgment in favor of Camas County on the basis that Martin lacked standing to bring an action for declaratory judgment, as Martin failed to demonstrate that he has suffered from a distinct palpable injury, or that he should have been found to have standing under the *Koch* exception. Costs to Camas County.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**