## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 45419

| | | |
|---|---|---|
| In the Matter of:  JANE DOE II, | ) | |
| A Child Under Eighteen (18) Years of Age. | ) | |
| ------------------------------------------------------- | ) | |
| JANE DOE I, | ) | Boise, February 2018 Term |
| | ) | |
| Petitioner-Respondent, | ) | 2018 Opinion No. 23 |
| | ) | |
| v. | ) | Filed: March 8, 2018 |
| | ) | |
| JOHN DOE (2017-31), | ) | Karel A. Lehrman, Clerk |
| | ) | |
| Respondent-Appellant. | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County, Hon. Stephen James Clark, Magistrate Judge.

The judgment of the magistrate court is affirmed.

Wixom Law Offices, Idaho Falls, for Appellant.

Murray, Ziel & Johnston, PLLC, Idaho Falls, for Respondent.

_____

TROUT, Justice Pro Tem.

John Doe (Father) appeals a decision of the magistrate court in Bonneville County to terminate Father's parental rights to his minor child Jane Doe II (Child). The magistrate court terminated Father's parental rights on a petition from Child's Stepfather and Mother, Jane Doe I (Mother), after finding that Father had abandoned Child and termination was in Child's best interest. On appeal, Father argues that the magistrate court's findings are not supported by substantial and competent evidence. Mother responds that the magistrate court's findings are supported by substantial and competent evidence and requests attorney fees on appeal. We affirm the decision of the magistrate court.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts were found by the magistrate judge and are supported by evidence in the record.  Father and Mother were married on June 20, 2012, and Child was born to Father and

1

Mother on August 9, 2012. Based on Father being charged with domestic battery against Mother, a No Contact Order was entered by the magistrate court on January 30, 2013, which provided that Father was to have no contact with mother or her immediate family (except as to children who are subject to a separate custody/visitation order) and that Order was extended until February 6, 2015. Father and Mother subsequently divorced on January 23, 2014, and a decree of divorce was entered incorporating a parenting plan and property settlement agreement between the parties. In the parenting plan, Father was provided eight hours of supervised visitation each month on the weekends, together with holidays and other specified times. In addition, Father was entitled to telephone or Skype with the child once per week and send letters. After entry of the divorce decree, the record reflects that Father would visit with Child approximately twice each month but these visits decreased in regularity until Father was incarcerated in May 2015.

As a part of the parenting plan, Father was obligated to pay child support of $125 per month beginning January 2014. The only recorded payments occurred over a three-month period ending in July 2014, and were as a result of garnished wages. Father asserted there were some additional cash payments of unknown amounts with money gained from illegal drug activities.

Father is currently in prison, serving a sentence of three years determinate followed by twelve years indeterminate, for two counts of rape based upon sexual relations with underage females. Since Father has been incarcerated, Father has had no contact with Child and has not sent or had delivered any letters to Child. The magistrate court recognized that, given Child's age, it was understandable Father did not send letters, as she could not read them. There were also no packages or presents sent to Child, although again, the magistrate court recognized that Father's prison sentence would have made attempts to do so impractical. However, the magistrate court also found that Father was aware his sister had ongoing contact with Mother and was willing to deliver letters and packages to Child if asked. While Mother had declined collect calls from Father, Mother did answer the only pre-paid call made by Father. During this brief call, Child was not a topic of conversation. Mother married Stepfather on May 4, 2016. Stepfather has stepped into the role of Child's father since Mother and Stepfather's marriage.

Mother and Stepfather petitioned the magistrate court to terminate Father's parental rights on November 23, 2016. While Father initially indicated he would consent to termination

and adoption by Stepfather, Father filed an answer contesting the termination of his rights to Child.

A court trial was held on August 31, 2017, to determine whether grounds for termination existed under Idaho Code section 16-2005. The magistrate judge made findings of fact and conclusions of law terminating Father's parental rights based upon a determination that Father had abandoned Child and termination was in Child's best interest. Father timely appealed.

## II. STANDARD OF REVIEW

When reviewing a termination decision, this Court reviews the trial court record to determine whether substantial and competent evidence supports the magistrate court's findings of fact and whether the conclusions of law follow from those findings. *Doe v. Doe*, 148 Idaho 243, 245, 220 P.3d 1062, 1064 (2009). "Substantial and competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *In re Doe*, 146 Idaho 759, 761, 203 P.3d 689, 691 (2009)). "This Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated." *Id.* at 245–46, 220 P.3d at 1064–65 (quoting *Matter of Aragon*, 120 Idaho 606, 608, 818 P.2d 310, 312 (1991)).

## III. ANALYSIS

### A. The magistrate court's findings of fact are supported by substantial and competent evidence.

The magistrate court terminated Father's parental rights after finding that Father had abandoned Child and termination was in Child's best interest. Father argues on appeal that substantial and competent evidence does not support the magistrate court's findings of abandonment and that termination is not in Child's best interest.

Idaho Code section 16-2005 governs the various conditions under which parental rights may be terminated. The magistrate court granted the petition under the abandonment grounds present in this provision: "The court may grant an order terminating the relationship where it finds that termination of parental rights is in the best interests of the child and that . . . [t]he parent has abandoned the child." I.C. § 16-2005(1)(a). Abandonment, in this sense, "means the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. Failure of the parent to maintain this relationship

3

without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment . . . ." I.C. § 16-2002(5). After finding that a child has been abandoned, termination must also be in the child's best interest:

> When determining whether termination is in the child's best interests the trial court may consider the stability and permanency of the home, unemployment of the parent, the financial contribution of the parent to the child's care . . . , the parent's efforts to improve his or her situation, and the parent's continuing problems with the law.

*In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). These two requirements will be discussed in detail individually.

### 1. Abandonment

In *Doe v. State*, 137 Idaho 758, 53 P.3d 341 (2002), this Court considered how these statutory sections apply to incarcerated parents. In that case, the father of the child had been incarcerated since the child's birth and he had never actually seen the child. *Id.* at 761, 53 P.3d at 344. This Court vacated the termination decision because the father "desired to maintain his parental rights and tried to maintain contact as best he could while he was in prison." *Id.* The Court specifically pointed to several things the father had done to maintain the parental relationship while incarcerated:

> He provided Christmas gifts to the child through a church fellowship and/or through Angel Tree for three Christmases. Doe wrote letters to the child's maternal grandmother expressing interest in the child, but the grandmother did not respond to him. At least two of Doe's aunts contacted the case worker for the Department, expressing interest in the child. Doe testified that he sent a picture "of Mickey Mouse or something for the child" and a letter to the child for the child's birthday and sent a gift of a handkerchief drawing to the child. Doe called the caseworker a number of times regarding the child and signed documents authorizing medical services.

*Id.* The Court focused on these factors as a realization that "Doe was severely restricted in what he could do. *Within that context he tried to establish a relationship.*" *Id.* at 762, 53 P.3d at 345 (emphasis added). Because of these efforts the father made to establish a relationship, the Court vacated the termination and remanded the case for further proceedings.

In *Doe,* the Court recognized the difficulty of maintaining a relationship because of the restricted nature of contact when a parent is incarcerated. However, the Court overturned termination in *Doe* because the father was clearly doing whatever he could—despite the

4

limitations—to build a relationship with his child. As the Court asked: "what more could [father] have done?" *Id.* at 761, 53 P.3d at 344.

In the instant case, the magistrate court found the following facts—based on the trial testimony—that demonstrate Father willfully failed to maintain his parental relationship: (1) inconsistent contact prior to incarceration when he had the opportunity; (2) minimal payment of child support; and (3) lack of efforts to have some form of contact whether by mail, telephone, third party, or gifts after he was imprisoned. As indicated in the factual background above, Father had opportunities to maintain some contact with Child while incarcerated, and simply failed to do so. While Father points to the calls that he placed to Mother from prison, these calls were collect and placed the financial burden on Mother. Additionally, while Father was unable to have contact with Child from prison, he could have asked his family to communicate messages or deliver small gifts to Child.

Also different from the situation in *Doe*, is the fact that Father was able to have contact with Child for several years before he was incarcerated. The magistrate court described Father's pre-incarceration conduct in this way: "While struggling with addiction, there was no reason he could not have sent cards or presents to the child or made some token efforts to pay child support until forced to do so." Before incarceration he would have contact with Child approximately twice each month that decreased in regularity. "The lack of effort to contact the child when he knew at least where [Mother] worked was not justified. These were his choices. These choices resulted in a failure to provide regular personal contact."

The magistrate court noted that at the time of the hearing, Father has been completely absent from Child's life for approximately one-half of her life. Father would remain incarcerated at least until May, 2018, and potentially up to nine years thereafter. This potential of future incarceration was significant to the court in analyzing Father's abilities to parent. All of these findings of the magistrate court follow directly from the trial testimony; thus, the magistrate court's finding of abandonment is supported by substantial and competent evidence.

### 2. Best Interests

Father argues that termination is not in the best interests of Child because of their relationship before his incarceration. Mother argues that Father's continued unpredictability in Child's life, Father's absence from Child's life since incarceration, and Child's bond with Stepfather make termination in Child's best interests.

5

When determining whether termination is in the child's best interests the trial court may consider the stability and permanency of the home, unemployment of the parent, the financial contribution of the parent to the child's care . . . , the parent's efforts to improve his or her situation, and the parent's continuing problems with the law.

*In re Doe*, 156 Idaho at 111, 320 P.3d at 1270. The magistrate court explicitly considered the "stability and certainty for the child. Having [Father] available at some unknown time does not create that stability and certainty." The magistrate court concluded, based upon clear and convincing evidence, that Mother had met her burden to show that termination was in Child's best interests, specifically: Father is incarcerated for multiple charges of a sexual nature; Father has a continued lack of financial stability; Father's history of poor choices including the use of controlled substances both in and out of prison; any bond which existed between Child and Father has attenuated, if not been extinguished; lack of certainty when Father may be available to serve as parent; and Child has stability and certainty under the care of Mother and Stepfather.

These findings follow from Father's own trial testimony. Father testified that he was incarcerated for having sex with three girls that were underage. Father also testified that he may not be released from prison for an additional thirteen years. Father testified that Child may not even remember or recognize him. Father further testified about the satisfactory nature of Child's care with Mother. With this evidence in the record, the magistrate court's finding that termination is in the best interest of Child is supported by substantial and competent evidence of Father's conduct, both before and after incarceration. Further, the magistrate's legal conclusion to terminate Father's parental rights follows from its factual findings. As such, we must affirm the magistrate court's decision to terminate Father's parental rights.

**B. Mother is not entitled to attorney fees on appeal.**

Mother argues that "Father has failed to show that the Magistrate Court decision was not supported by substantial and competent evidence, and therefore, Mother is entitled to attorneys [sic] fees on appeal." She cites to Idaho Code section 12-121 as the basis for her argument.

Mother cites to *Ernst v. Hemenway & Moser Co., Inc.*, 126 Idaho 980, 895 P.2d 581 (Ct. App. 1995). While that is not a decision of this Court, *Ernst* correctly applies the consistent standard that this Court has enunciated for an award of attorney fees under Idaho Code section 12-121. As the Court of Appeals stated:

H & M has failed on appeal to present any significant issue regarding a question of law. H & M has not shown that the findings of fact made by the district court

6

were arguably unsupported by substantial evidence. H & M has not advanced any new legal standards or sought modification of existing ones.

*Id.* at 988, 895 P.2d at 589.   As the trial court noted:

These cases are among the most difficult for the Court to decide.  Both counsel effectively presented the respective position of the parties.  There were factors which tugged both ways and, as in many of these cases, the decision is never clear cut, but rather the case turns on the Court sifting through the various factors to come to a decision.

Father made a good faith argument that the termination decision was not supported by the evidence.  As such, we cannot say that this appeal was pursued frivolously or unreasonably. Mother is not entitled to an award of attorney fees.

## IV. CONCLUSION

We affirm the decision of the magistrate court to terminate Father's rights to Child because this decision follows the magistrate court's findings of abandonment and the best interests of Child that are supported by substantial and competent evidence. On appeal, Mother is not entitled to an award of attorney fees.

Chief Justice BURDICK, Justices BRODY, and BEVAN **CONCUR.**