# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45727

ERIK T. BOE,

    Petitioner-Respondent,

v.

AMELIA M. BOE, nka JOHNSON,

    Respondent-Appellant.

Boise, June 2018 Term

Filed: July 27, 2018

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Laurie A. Fortier, Magistrate Judge.

Magistrate court ruling affirmed.

Bauer Ryan, PLLC, Boise, for appellant. Margalit Z. Ryan argued.

Geoffrey E. Goss, Boise, for respondent. Geoffrey E. Goss argued.

---

BURDICK, Chief Justice.

Amelia M. Johnson, fka Boe (Mother), brings this permissive appeal under Idaho Appellate Rule 12.1 from the Ada County magistrate court. Mother and Erik T. Boe (Father) divorced in 2010 and, at that time, stipulated to a joint-custody arrangement regarding their two minor children, L.R.B. and L.E.B. (collectively, the Children). That custody arrangement governed until 2015, when Father relocated from Southeast Boise to Meridian. With Father's move came disputes over physical and legal custody, which schools the Children should attend, and issues pertaining to child support. A two-year course of litigation ensued, with Mother and Father ultimately stipulating to a partial judgment that resolved physical custody and trying issues concerning legal custody, the Children's schools, and child support to the magistrate court. As relevant here, the magistrate court ruled that the Children were to attend the schools assigned to Father's Meridian home (the Meridian Schools), and that Mother and Father were each

1

entitled to one dependency exemption. On appeal, Mother challenges these rulings and, further, makes several contentions pertaining to physical custody. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father divorced in 2010. They stipulated to a divorce decree allowing for joint legal and physical custody over the Children.[1] They agreed that Father's home address in Southeast Boise would be used for school registration purposes. The Children were thus enrolled at the schools assigned to Father's Southeast Boise home address (the Boise Schools), and this was uncontested until Father relocated from Southeast Boise to Meridian in 2015.

Along with Father's 2015 move to Meridian came the filing of his petition to modify the divorce decree as it pertained to child custody. In that petition, filed on October 2, 2015, Father requested "sole legal custody as it relates to the education of the minor children." Father identified several events as substantial, material, and permanent changes in circumstances, including: (1) his move from Southeast Boise to Meridian; (2) his address had always been used for school registration purposes; (3) Mother moved frequently, and had her address been used for school registration purposes, the Children would have been placed in three schools by the fourth grade; and (4) Mother did not prioritize the Children's education. Consequently, Father specifically requested that he be allowed to enroll the Children at the Meridian Schools.[2] Mother answered Father's petition, in relevant part, by counterclaiming that she should be awarded sole legal custody and primary physical custody, with visitation rights for Father, and requesting a modification of child support.[3]

On February 19, 2016, Mother and Father stipulated to allow Robert Engle, Ph.D., to perform a custody evaluation (the First Custody Evaluation). The parties agreed that the First Custody Evaluation was "to help aid the parties to address their communication issues and to determine a final custodial arrangement with the . . . [C]hildren." Father's counsel prepared an order pertaining to the stipulation, which order stated that "the parties shall be bound by the recommendations concerning custody from said evaluation." When the order was sent to Mother, she was instructed that, "[i]f [she] had any problems with this, let [Father's counsel] know right

---

[1] As Mother explains in her opening brief, "[t]here was a modification of the Decree of Divorce, in 2013, but it did not affect the custody of the minor children."

[2] Father amended his petition in March 2016 to seek both (1) "sole legal custody of the . . . [C]hildren and the ability to register the . . . [C]hildren immediately in [the Meridian Schools]"; and (2) "primary physical and residential custody of the . . . [C]hildren, subject to visitation with [Mother]."

[3] Mother's amended answer to Father's amended petition is substantially identical to her initial answer.

away, and we'll make whatever recommendations or changes to that order." No objection was made, and instead, Mother and Father signed the stipulation that accompanied the order. The magistrate court signed and entered the order on February 22, 2016.

Dr. Engle conducted the First Custody Evaluation in July 2016. He concluded it was in the Children's best interests for Father to have sole legal custody concerning educational decisions and primary physical custody during the school year. The magistrate court implemented the First Custody Evaluation at Father's request by entering a corresponding interlocutory judgment on August 12, 2016,[4] ordering that (1) the "parties shall have joint legal custody of [the Children], with [Father] being awarded sole legal custody as it pertains to the educational decisions"; (2) "[the C]hildren shall attend the school(s) associated with [Father's] residence"; and (3) during the schoolyear [sic], Father "shall be awarded primary physical custody of the . . . [C]hildren, subject to visitation with [Mother.]"

Mother moved for reconsideration on October 3, 2016. Mother challenged the First Custody Evaluation by contending it was improperly prepared and erroneously implemented because, according to Mother, the parties did not stipulate to be bound by it. The magistrate court denied the motion on November 30, 2016.

Anticipating trial on the issues of physical custody and child support, Father filed a motion in limine to exclude evidence contrary to the First Custody Evaluation on January 18, 2017. The magistrate court granted Father's motion, ruling that "evidence to the contrary [of the First Custody Evaluation] will be excluded at the trial on the understanding that the parties have, in essence, agreed to allow the [First Custody Evaluation] to be the only evidence on that point."

But Mother's challenges against the First Custody Evaluation continued. After deposing Dr. Engle, she filed a motion in limine to exclude Dr. Engle's testimony and the First Custody Evaluation from evidence. Similarly, Mother moved the magistrate court to reconsider its ruling granting Father's motion in limine. The magistrate court heard these two intertwined motions on February 21, 2017, and found that the First Custody Evaluation had been erroneously prepared, as it did not comply with Idaho Rule of Family Procedure 719 and that rule's express incorporation of the Association of Family and Conciliation Courts Model Standards of Practice

---

[4] The magistrate court designated this judgment as an interlocutory judgment, as it did not resolve all issues and instead provided that a "[c]ourt [t]rial shall be scheduled . . . to resolve the outstanding issues reserved by this judgment." The interlocutory judgment resolved the issues of legal custody pertaining to educational decisions and physical custody during the school year, but left unresolved additional issues concerning physical custody and child support.

for Child Custody Evaluations (AFCC). Specifically, the First Custody Evaluation was deemed erroneously prepared because, as relevant here, Dr. Engle accepted Father's assertions as true and "at face value" without giving Mother a chance to respond, which the magistrate court found especially problematic.[5] In fact, Dr. Engle conceded that, while he "used to . . . have a meeting to go over the allegations and the parents' responses to the allegations[,]" he had since "quit doing that because it was useless" and further conceded that he "do[es]n't do that anymore with anybody." Consequently, the magistrate court reasoned that

> an evaluation that has a willful disregard, which is what appears to be the case here, of the basic procedure and rules that are contained in Rule 719, and by extension, the standards set forth by the AFCC, the parenting time evaluation in this case is not a parenting time evaluation any more than an affidavit that is unsworn is not an affidavit or a check that is unsigned is not a negotiable instrument.

The magistrate court therefore excluded the First Custody Evaluation from evidence, vacated the impending trial date, and ordered a new custody evaluation from Todd Bennett, Ph.D. Although Mother moved the magistrate court to vacate the interlocutory judgment that implemented the First Custody Evaluation, the magistrate court denied Mother's request and allowed it to govern.

Dr. Bennett's custody evaluation (the Second Custody Evaluation) was filed with the magistrate court on July 21, 2017. Dr. Bennett recommended that Mother and Father have shared physical and legal custody, and that the Children be assigned to the Meridian Schools. Regarding physical custody, Dr. Bennett concluded that, "[u]ltimately, it is in the best interest of the [C]hildren to have both parents act in a facilitative role." Regarding the Children's schools, Dr. Bennett explained that the Children "have done well this past year" and that they should continue attending the Meridian Schools. However, he declined to recommend that one parent be awarded legal custody, explaining:

> I do not recommend that either parent have legal decision-making over school related issues. When one parent has legal authority, they stop co-parenting with the other parent. If there are major decisions to be made, such as school,

---

[5] While the exclusion of the First Custody Evaluation is not at issue on appeal, *Gallagher v. State*, 141 Idaho 665, 669, 115 P.3d 756, 760 (2005) (explaining that issues not raised in the opening brief are waived), its exclusion is supported by Idaho Rule of Family Procedure 719 and that rule's express incorporation of the AFCC. The AFCC require, *inter alia*, that evaluations be accurate, objective, and that "any allegation concerning a matter that the evaluator is likely to consider in formulating his/her opinion shall be brought to the attention of the party against whom the allegation is registered so that s/he is afforded an opportunity to respond." AFCC § 5.5. Association of Family and Conciliation Courts, *Model Standards of Practice for Child Custody Evaluations* (2006), *available at* https://www.afccnet.org/Portals/0/ModelStdsChildCustodyEvalSept2006.pdf.

4

summer school, or extracurricular activities that the parents cannot agree on, this would be an appropriate use of a parenting coordinator assigned to their family.

After the Second Custody Evaluation, Mother and Father stipulated to entry of a partial judgment to resolve the issue of physical custody. Under the partial judgment, Mother and Father stipulated to "a shared week on off custodial arrangement." The magistrate court signed and entered the partial judgment on August 30, 2017. The outstanding issues concerning "what school the [C]hildren should attend, [Father's] request to have sole decision regarding choice of school, and matters of [child] support[,]" were tried to the magistrate court on September 6, 2017. The magistrate court ruled that the Children "will continue to attend their present schools [(*i.e.*, the Meridian Schools)] and future schools that are assigned to [Father's] current residence [in Meridian]. Any changes to school(s) must be agreed upon, unless it normally flows from [Father's] residence." In addition, the magistrate court awarded one dependency exemption to Mother and one to Father. Mother timely sought permission to appeal these rulings from trial under Idaho Appellate Rule 12.1, and the magistrate court granted her request.

## II. ISSUES ON APPEAL

1.    Are Mother's challenges concerning physical custody moot?

2.    Did the magistrate court err by assigning the Children to the Meridian Schools?

3.    Did the magistrate court abuse its discretion in allocating the two dependency exemptions?

4.    Should attorney fees be awarded on appeal?

## III. ANALYSIS

**A.    Mother's challenges concerning physical custody are moot.**

"Justiciability issues, such as mootness, are freely reviewed." *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 159 Idaho 813, 826, 367 P.3d 208, 221 (2016) (quoting *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010)). "An issue becomes moot if it does not present a real and substantial controversy that is capable of being concluded through judicial decree of specific relief." *Nampa Educ. Ass'n v. Nampa Sch. Dist. No. 131*, 158 Idaho 87, 90, 343 P.3d 1094, 1097 (2015) (quoting *Ameritel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 851, 119 P.3d 624, 626 (2005)). Stated differently, mootness "applies when a favorable judicial decision would not result in any relief. This Court may only review cases in which a judicial determination will have a practical effect on the outcome." *Houpt v. Wells Fargo Bank, Nat. Ass'n*, 160 Idaho 181, 189, 370 P.3d 384, 392 (2016) (quoting *Fenn v. Noah*, 142 Idaho 775,

779, 133 P.3d 1240, 1244 (2006)). "This Court must raise issues of mootness *sua sponte* because it is a jurisdictional issue." *Suter v. Biggers*, 157 Idaho 542, 550, 337 P.3d 1271, 1279 (2014).

Mother makes a flurry of contentions in an effort to show that the magistrate court erred by ordering the parties to be governed by the physical custody arrangement set forth in the First Custody Evaluation. She specifically disputes the magistrate court's conclusion that she validly stipulated to be bound by the First Custody Evaluation, contends the First Custody Evaluation was erroneously prepared, and asserts the magistrate court inappropriately abdicated its duties to Dr. Engle. However, Mother's challenges concerning physical custody under the First Custody Evaluation are moot because it no longer governs physical custody in this case, but instead has been superseded by the parties' stipulated-to partial judgment. A procedural recap will illustrate.

On February 19, 2016, the parties stipulated to allow Dr. Engle to perform the First Custody Evaluation. By entering the interlocutory judgment dated August 12, 2016, the magistrate court implemented the First Custody Evaluation, ordering, as Dr. Engle recommended, that (1) the "parties shall have joint legal custody of [the Children], with [Father] being awarded sole legal custody as it pertains to the educational decisions"; (2) "[the C]hildren shall attend the school(s) associated with [Father's] residence"; and (3) during the school year, Father "shall be awarded primary physical custody of the . . . [C]hildren, subject to visitation with [Mother.]" Mother objected to the magistrate court's implementation of the First Custody Evaluation by filing a motion to reconsider, a motion in limine to exclude the First Custody Evaluation from evidence, and a motion requesting the magistrate court to reconsider its ruling on Father's motion in limine.

At the hearing on Mother's motions in limine and requesting reconsideration of the ruling on Father's motion in limine, the magistrate court found that the First Custody Evaluation had been erroneously prepared and did not comply with Idaho Rule of Family Procedure 719 and the AFCC. Therefore, although the magistrate court did not vacate the interlocutory judgment implementing the First Custody Evaluation, it excluded the First Custody Evaluation from evidence, vacated the impending trial date (which, then, was just two days away), and ordered the Second Custody Evaluation from Dr. Bennett. The Second Custody Evaluation, filed with the magistrate court on July 21, 2017, recommended that Mother and Father have shared legal and physical custody, and that the Children be assigned to the Meridian Schools.

6

On August 29, 2017, after the Second Custody Evaluation was conducted, Mother and Father stipulated to entry of a partial judgment that resolved the issue of physical custody. Under the partial judgment, Mother and Father stipulated to "a shared week on off custodial arrangement." As Mother explains in her briefing,

> prior to trial, the parties settled the issue of physical custody. The parties filed a stipulation for the entry of a partial judgment, wherein physical custody returned to the status quo that existed prior to [Father] filing his petition to modify custody, with the parents alternating one-week periods of custody with the [C]hildren. The issues remaining for the trial court's determination were what school the [C]hildren should attend, [Father's] request to have sole decision regarding choice of school, and matters of support.

Clearly, the partial judgment did not implement the physical custody arrangement set forth in the First Custody Evaluation. Rather, the partial judgment implemented the physical custody arrangement to which the parties had stipulated. The stipulated-to partial judgment, which still governs, moots Mother's challenges concerning physical custody.

The parties cite to this Court's decision in *Suter*, 157 Idaho 542, 337 P.3d 1271, which is instructive in this instance. In *Suter*, the mother appealed, in relevant part, a temporary order that had been entered without any findings of fact or conclusions of law. *Id.* at 550–51, 337 P.3d at 1279–80. But following the temporary order, "the court entered its January 2014 decision and its February 2014 Third Modified Decree, which effectively replace[d] the temporary order." *Id.* Accordingly, this Court dismissed that challenge as moot in *Suter*. *Id.* at 551, 337 P.3d at 1280. Here too, like the temporary order in *Suter*, the First Custody Evaluation has been effectively replaced by the stipulated-to partial judgment. This moots Mother's challenges concerning physical custody.

Were this Court to rule on the merits of Mother's challenges against physical custody under the First Custody Evaluation, no relief would result. Indeed, it is not as if the physical custody arrangement would be modified if this Court were to rule on the merits of these challenges. *Houpt*, 160 Idaho at 189, 370 P.3d at 392 ("This Court may only review cases in which a judicial determination will have a practical effect on the outcome." (quoting *Fenn*, 142 Idaho at 779, 133 P.3d at 1244)). To the contrary, the stipulated-to partial judgment would still govern physical custody, and Mother has not made any argument that it should be voided. *But cf. Budget Truck Sales v. Tilley*, nos. 45082-45083 slip op. at p. 5 (April 20, 2018) ("An agreement

entered into in good faith in order to settle adverse claims is binding upon the parties, and absent a showing of fraud, duress or undue influence, is enforceable either at law or in equity.").

Because Mother's challenges concerning physical custody do not create a real, substantial controversy for us to resolve, we dismiss them as moot.

**B.    The magistrate court did not err by assigning the Children to the Meridian Schools.**

Mother contends the magistrate court erred by assigning the Children to the Meridian Schools. Before addressing the merits of Mother's arguments, we clarify that, unlike physical custody, the issue of determining the Children's schools, as raised in Father's 2015 petition, is not mooted by the stipulated-to partial judgment. In that judgment, the parties left unresolved the issues of legal custody concerning educational decisions and which schools the Children were to attend. The parties tried those issues to the magistrate court on September 6, 2017. On September 21, 2017, the magistrate court issued its rulings from the bench and assigned the Children to the Meridian Schools, but did not award legal custody to either parent. As the magistrate court explained, "[r]ather than assign legal custody to one parent or the other, since the [C]hildren are already attending [the Meridian Schools], we're just going to have them continue to attend [the Meridian Schools]." A corresponding judgment was entered on December 12, 2017. From that judgment, Mother appeals. Our standard of review is as follows:

> This is a permissive appeal under [I.A.R.] 12.1, and as such, the Court reviews the magistrate judge's decision without the benefit of a district court appellate decision. A trial court's child custody decision will not be overturned absent an abuse of discretion. A trial court does not abuse its discretion as long as the court "recognizes the issue as one of discretion, acts within the outer limits of its discretion and consistently with the legal standards applicable to the available choices, and reaches its decision through an exercise of reason."[6] When the trial court's decisions affect children, the best interests of the child is the primary consideration.

*Lamont v. Lamont*, 158 Idaho 353, 356, 347 P.3d 645, 648 (2015) (citations omitted). "This Court will affirm the decision of a magistrate so long as there was substantial competent evidence to support the decision, even if conflicting evidence was presented." *Woods v. Sanders*, 150 Idaho 53, 60, 244 P.3d 197, 204 (2010).

---

[6] We recently clarified that the abuse of discretion inquiry consists of four separate questions, asking whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with relevant legal standards; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, No. 45200, 2018 WL 3150964, at *4 (June 28, 2018).

8

As the party moving to modify custody, Father had the burden to prove the occurrence of a substantial, material, and permanent change in circumstances that warranted a change of custody aligning with the Children's best interests.[7] *E.g.*, *Searle v. Searle*, 162 Idaho 839, 846, 405 P.3d 1180, 1187 (2017). The magistrate court concluded Father's move to Meridian constituted a substantial, material, and permanent change in circumstances, and this conclusion is undisputed on appeal. Mother disputes instead the magistrate court's school ruling by contending Father failed to prove it was in the Children's best interests to attend the Meridian Schools. Mother's argument does not persuade us.

Indeed, the evidence Father presented at trial undercuts Mother's contention. When presenting his case in chief, Father called Dr. Bennett, who performed the Second Custody Evaluation, as his first witness. Dr. Bennett testified that he has performed custody evaluations for seventeen years. Dr. Bennett testified that, in preparing the Second Custody Evaluation, he performed multiple interviews of the parents and the Children, including interviews "with each child in each parent's home individually[.]" In Dr. Bennett's view, the Children were "pretty positive kids" who "liked everything" and "didn't have really anything negative to say about anything." While he acknowledged that the Children thus liked both the Boise and Meridian Schools, Dr. Bennett testified that the Children "were doing better in this school [(*i.e.*, the Meridian Schools)] academically than they were previously[,]" and that the Children's academic "performance currently has improved based on where it was in the past." When cross examined by Mother, Dr. Bennett elaborated that,

> specifically regarding [L.E.B.], there was an assessment done while he was at [the Boise Schools] that stated he was performing in second grade at the beginning levels of a first grade student. When they transferred over into [the Meridian Schools], he was retained a year, and his grade performance is -- has been at grade level. And I believe that their academic performance has been positive.

Dr. Bennett's testimony comports with and further explains the Second Custody Evaluation, which Father proffered as a trial exhibit. In the Second Custody Evaluation, Dr. Bennett concluded that it was in the Children's best interests for them to be assigned to the Meridian Schools. As Dr. Bennett reasoned,

---

[7] The burden shifts to the non-moving party only "when two elements are met: (1) the other parent seeks permission to relocate and (2) that relocation would violate an existing custody arrangement." *Suter*, 157 Idaho at 547, 337 P.3d at 1276. These elements are not triggered in this case, as Mother did not seek to relocate. Thus, Father was to have the burden of proof.

[the Children] indicated that they have many friends, several of whom live in their same neighborhood [in Meridian]. They reported that they liked to their teachers, the playground, and the food [at the Meridian Schools]. [L.R.B] said that he found it easier to make friends at Hunter [at the Meridian Schools]. [L.R.B.] reported that he is planning on attending [the Meridian Schools'] middle school next year. He thinks that this will be "cool" and he is excited to transition to this school.

In reaching his recommendation, Dr. Bennett observed that Father "has been primarily active in dealing with the schooling regarding the [Children]," though Dr. Bennett acknowledged that Mother "has had some involvement" in the Children's schooling. This observation was based, in part, on the fact that Mother "did not attend some of the critical [educational] meetings regarding [L.E.B.] She did, however, meet with the staff after [the meetings] and signed off on the meeting notes." Dr. Bennett attributed the differing levels of involvement to contrasting personality traits. He explained that Father "is an engineer and has a personality consistent with this occupation. He is detail oriented, logical, a rule follower, structured, and predictable." Mother, conversely, "is much more emotional and relaxed in her parenting style. She is relational, flexible, creative, and willing to be in the moment." While Dr. Bennett recognized that "[n]either one of these personality dynamics appear to be so extreme that they end up harming the [C]hildren[,] he concluded that Father "has a personality much more inclined to follow through and be consistent with school related issues." When asked at trial on direct examination whether anything had caused Dr. Bennett to reconsider his recommendation set forth in the Second Custody Evaluation, he explained as follows:

> No. No. There is just no point in bumping the kids around again in school placement. [Father] seems to be very structured, detail-oriented, very actively involved in the [Children's] schooling decisions, very much on top of it. And I think he's a parent that will do a very good job in that capacity.

Aside from Dr. Bennett's testimony and the Second Custody Evaluation, Father presented additional evidence at trial illustrating the Children's enhanced performance at the Meridian Schools. As his second witness, Father called his wife, Tiara Boe, who works as a teacher in the West Ada School District. She testified that the Children "are doing wonderful socially" at the Meridian Schools. Regarding L.R.B., Tiara testified that "[h]e's loving the choices he's offered. He gets to take the science classes that he loves. He loves the lunchroom choices and the sports that he's participating in. And he's very happy as well[.]" Regarding L.E.B., Tiara testified that his academic performance has improved at the Meridian Schools, and

10

specifically, "[i]t was like a breath of fresh air for him last year to retake second grade.[8] He fit in; he looked like a second grader. He acted like a second grader. It was a wonderful opportunity that we're very blessed that we had the chance to do."

Father additionally testified to the Children's enhanced performance at the Meridian Schools during his case in chief. He explained that, while L.R.B. has "always dealt with really difficult anxiety issues[,]" L.R.B. has made "more friends than he's ever had" while attending the Meridian Schools. He further testified that L.R.B. had "joined the cross country team and just had his first meet last week. And he had an incredible time. . . . [I]t was a really a positive experience." And concerning L.E.B., Father testified to his improved academic performance. Father specifically testified that L.E.B. had "operat[ed at] over a full grade level behind where he was at" during L.E.B.'s second-grade school year at the Boise Schools. As a result, when L.E.B. was enrolled at the Meridian Schools, he was assigned to repeat the second-grade school year. By the time of trial, Father testified that L.E.B. had "made tremendous progress because the team at [the Meridian Schools] is incredible." In fact, Father further testified that L.E.B. "had the best year he's had so far" while at the Meridian Schools.

The magistrate court's findings are consistent with the evidence presented. In that regard, the magistrate court found that the Children were "well adjusted to the [Meridian Schools], that they like their school, and enjoy the social component of having many friends in the same neighborhood." Although the magistrate court recognized that the Boise and Meridian Schools were comparable in many ways, important differences were found. In particular, regarding L.R.B., the magistrate court found that L.R.B. was doing well socially at the Meridian Schools, as L.R.B. had "told Dr. Bennett that he felt that it was easier to make friends at [the Meridian Schools.]" As to L.E.B.,

> [t]he one marked difference in the educational piece that would happen at [the Boise Schools] is that [L.E.B.] would be placed in the class behind his former classmates because he had been retained in the second grade. And at [the

---

[8] When L.E.B. was enrolled at the Meridian Schools, Father assigned L.E.B. to retake the second grade. Father had authority to do so under the interlocutory judgment entered on August 12, 2016. As the magistrate court explained, Father made this decision after "consultation from both his wife and his mother-in-law, who are in the education field and are education professionals[.]" The record shows that Father informed Mother of L.E.B.'s second-grade assignment by email dated August 19, 2016, but Mother did not respond. In the Second Custody Evaluation, Dr. Bennett observed that Father's "decision to retain [L.E.B. in the second grade] was the right thing to do based on his current level of functioning in school. [L.E.B.'s] academic performance has improved dramatically and in talking with him, he feels like he fits in well with his class and within the school."

11

Meridian Schools], he would remain in the same classroom with the same classmates that he previously had.

To be sure, the magistrate court did acknowledge that Mother had proffered evidence showing that the Children's "wishes . . . seemed to indicate that they might want to go back to [the Boise Schools.]" But the magistrate court then ascribed prevailing weight to the evidence proffered by Father, noting that the Second Custody Evaluation expressly found that "the [Children] may be communicating to [Mother] things that they believe she wants to hear. . . . I would caution [Mother] to be careful how she interprets what the [Children] tell her and to recognize how she could be influencing some of their statements." It was within the province of the magistrate court, as the finder of fact, to conclude Father's evidence deserved prevailing weight. *Benninger v. Derifield*, 142 Idaho 486, 489, 129 P.3d 1235, 1238 (2006) ("It is the province of the [magistrate court] acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses."). On appeal, "[i]t is not our role to reweigh the evidence." *Frontier Dev. Grp., LLC v. Caravella*, 157 Idaho 589, 595, 338 P.3d 1193, 1199 (2014) (quoting *In re Doe 2009-19*, 150 Idaho 201, 209, 245 P.3d 953, 961 (2010)).

Notwithstanding the evidence Father proffered at trial, Mother contends the magistrate court erroneously shifted the burden of proof from Father to Mother. As Mother elaborates,

> [w]hen the trial court relied on the "faux"[9] status quo, it shifted the burden of proof away from [Father], and onto [Mother]. The trial court's earlier order allowed [Father] to change the [C]hildren's school away from [the Boise Schools], where they had been attending when the case was initiated by [Father]. Then, a year later, it was effectively [Mother's] burden to show that a "return" to their original school would be in their best interest.

Mother's argument is unavailing. For one, the order of the trial shows that the burden of proof was properly placed on Father. As the moving party, Father was given the opportunity to make an opening statement before Mother made hers, though he chose not to present one. He then presented his case in chief first at the trial and, in doing so, called witnesses and proffered exhibits to support his petition to modify custody. At the conclusion of the trial, Father made his

---

[9] Mother uses the phrase "faux status quo" to refer to the custody arrangement ordered in the interlocutory judgment, under which the magistrate court ordered that the "parties shall have joint legal custody of [the Children], with [Father] being awarded sole legal custody as it pertains to the educational decisions . . . . [The C]hildren shall attend the [Meridian Schools] associated with [Father's] residence[,]" and that, during the school year, Father "shall be awarded primary physical custody of the minor children, subject to visitation with [Mother]." By contrast, Mother uses the phrase "original status quo" to refer to the custody arrangement that existed before the interlocutory judgment was entered, wherein the parties had joint legal and physical custody, with the Children attending the Boise Schools.

closing statement before Mother did, and he later made a rebuttal argument to Mother's closing statement. The order of the trial proceedings is consistent with Father's status as the moving party, and it is not as if the magistrate court treated Mother as the moving party by, for example, requiring her to present her case first as the moving party. *Cf. Suter*, 157 Idaho at 547, 337 P.3d at 1276 (rejecting argument that magistrate court misallocated the burden of proof because, in part, the moving party presented his case first). Mother even acknowledged this much when making her opening statement, where she explained, "[y]our Honor, we have a petition here, and that petition is asking the [Children] to move from [the Boise Schools] to [the Meridian Schools.]" Plus, based on the above-discussed evidence Father proffered, the record confirms that the burden of proof was properly placed on him. Otherwise, Father would have had no reason to proffer the evidence he did, which supported his request for the Children to be assigned to the Meridian Schools.

Equally unavailing is Mother's argument as it relates to the magistrate court's best-interest analysis. The magistrate court correctly recognized that the Children's "best interest is the sole matter in which the Court is concerned." *E.g.*, *Bartosz v. Jones*, 146 Idaho 449, 454, 197 P.3d 310, 315 (2008) ("In Idaho, the child's best interest is of paramount importance in child custody decisions."). To ascertain the Children's best interests, the magistrate court relied on the factors set forth under Idaho Code section 32-717.[10] Though the magistrate court recognized that it was "not necessarily making a full physical custody determination" since the parties had resolved that issue under the partial judgment, the magistrate court's reliance on these factors was appropriate. While weighing the enumerated section 32-717 factors, the magistrate court noted that conflicting evidence surrounded some of the factors. For example, the magistrate court acknowledged that, regarding the Children's wishes, evidence showed that "they liked th[e Meridian Schools]" and also "they liked th[e Boise Schools.]" And regarding the Children's

---

[10] Idaho Code section 32-717 serves to guide the best-interest analysis and instructs courts to consider all relevant factors, which may include:

    (a)  The wishes of the child's parent or parents as to his or her custody;
    (b)  The wishes of the child as to his or her custodian;
    (c)  The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;
    (d)  The child's adjustment to his or her home, school, and community;
    (e)  The character and circumstances of all individuals involved;
    (f)  The need to promote continuity and stability in the life of the child; and
    (g)  Domestic violence as defined in section 39-6303, Idaho Code, whether or not in the presence of the child.

adjustment to the schools, the magistrate court acknowledged that evidence showed that the Children "have been doing well [in the Meridian Schools]" and that they "had done fine in [the Boise Schools]." But when it came to the Children's adjustment to their schools, the magistrate court explained that the evidence showed that the Children were "well adjusted to the [Meridian Schools], that they like [the Meridian Schools], and enjoy the social component of having many friends in the same neighborhood[,]" and further, that the Children's academic performance had improved while attending the Meridian Schools. While Mother contends that the Children's need for continuity and stability supports her position that they be assigned to the Boise Schools, the evidence does not support her position. As Father showed at trial, from spring 2011 to summer 2017, Mother had requested that the Children attend eight different schools. Father appropriately found "it was important to note all the different schools that she's been interested in having the [Children] attend[,]" as Mother's requests for the Children to change schools rebuts her continuity and stability arguments focusing on the Boise Schools. In light of the above-discussed evidence, the magistrate court's school ruling is supported by substantial, competent evidence, compelling us to affirm. *See, e.g.*, *Woods*, 150 Idaho at 60, 244 P.3d at 204.

Mother cites this Court to *Hopper v. Hopper*, 144 Idaho 624, 167 P.3d 761 (2007), which does not cause us to reconsider our reasoning above. *Hopper* concerned a custody dispute between former spouses, Chris and Suzanne, over their minor child, Caidan. *Id.* at 626–27, 167 P.3d at 763–64. Chris and Suzanne married in 1999, and Caidan was born in January 2003. *Id.* at 625, 167 P.3d at 762. By June 2013, the relationship soured, and Suzanne furtively moved to Montana with Caidan, obtained a domestic violence protection order against Chris in Montana, and filed a petition for divorce in Montana. *Id.* When Chris was served with the protective order, he filed for divorce in Idaho. *Id.* Suzanne's Montana protection order claim was ultimately determined to be false, and the Montana divorce case was dismissed in deference to Idaho's jurisdiction. *Id.* Chris then filed a motion for temporary custody. *Id.* However, the "combined result of Suzanne leaving the state and filing the actions in Montana was to cut off the relationship between Chris and Caidan for over three months." *Id.* As such, the magistrate court awarded temporary custody of Caidan to Suzanne. *Id.* "The magistrate judge stated that the arrangement did not satisfy 'the court's sense of justice' as between the parties but concluded that Caidan's interests would best be served by remaining in Suzanne's custody during the pendency of the case, subject to substantial visitation by Chris." *Id.* A psychologist conducted a

14

parenting evaluation to assist in making a final custody evaluation, and the psychologist recommended that "the parties share joint legal custody of Caidan, with Suzanne having primary physical custody and Chris receiving frequent visitation." *Id.* That recommendation was based on how "Suzanne had historically been the primary parent and the one with whom Caidan had spent more time, noting that children of that age need stability and consistency, including a stable relationship with a primary caregiver." *Id.* Custody was later tried to the magistrate court, and Suzanne was awarded sole legal and physical custody. *Id.*

When Chris appealed, this Court reversed. It emphasized the presumption in favor of joint custody, and that "the custodial rights of [Chris] were compromised by the criminal act of [Suzanne] in taking [Caidan] from Idaho and the misconduct of [Suzanne] in making a false domestic violence claim." *Id.* at 627, 167 P.3d at 764. This Court further explained,

> [Chris's] equal rights were prejudiced by [Suzanne] absconding with [Caidan] in violation of I.C. § 18-4506 and obtaining an unfounded domestic violence order in Montana restricting [Chris's] ability to maintain a relationship with [Caidan]. Glossing over these facts and going to the end result that [Suzanne] has a greater relationship with [Caidan] than [Chris] creates an untenable condition. If permitted to stand, the lesson from this case is that the law may be disregarded, a crime committed, falsehoods told, and advantage gained from the misconduct. The proceedings should not have been allowed to continue for the duration with [Suzanne] holding [Caidan] out of state while gaining all of the evidentiary benefits of an enhanced relationship with [Caidan] to the detriment of [Chris]. [Suzanne] should have been ordered to return [Caidan] to Idaho where [Chris] might exercise his rights as an equal parent and have this case decided with the underlying legal and social principle that it is the best interests of a child to have a continuing relationship with both parents.
>
> The error that initially occurred has been exacerbated by the lapse of time as these proceedings have taken place. That is a misfortune that follows from the conduct of [Suzanne] and the failure of remedial action at the earliest stage of this case. Continuing misfortunes will accumulate if the advantage gained by [the misconduct] in this case is allowed to continue contrary to the fundamental social and criminal law of the state. There is no perfect remediation for the problems in this case, but at a minimum a custody hearing must be held with [Caidan] in Idaho where [Chris] has an opportunity to have the contact with [Caidan] to which he is entitled and [Caidan] receives the benefit recognized in our law that it is in the best interests of [Caidan] to have a continuing relationship with both parents.

*Id.*

Mother's reliance on *Hopper* is unavailing. Clearly, this case does not present criminal or otherwise flagrant misconduct, as *Hopper* did. *Hopper* stressed that, "[i]f permitted to stand, the lesson from this case is that the law may be disregarded, a crime committed, falsehoods told, and

15

advantage gained from the misconduct[,]" and further, that "[c]ontinuing misfortunes will accumulate if the advantage gained by [the misconduct] in this case is allowed to continue contrary to the fundamental social and criminal law of the state." *Id. Hopper* reflects the cornerstone maxim of our justice system that a party cannot reap a profit by virtue of committing misconduct. *See, e.g.*, 30A C.J.S. *Equity* § 110 (2018). In this case, by contrast, no misconduct was committed, and hence, no improper advantage inured to either party. Nor has Mother's continuing relationship with the Children been undermined, as it was in *Hopper*. To the contrary, Mother has joint physical custody. *Hopper* is unpersuasive here.

Because the magistrate court's ruling assigning the Children to the Meridian Schools was proper, we affirm.

**C.     We affirm the magistrate court's allocation of the two dependency exemptions.**

Allocating tax exemptions in a suit arising from the parent-child relationship is reviewed for an abuse of discretion. *See Rohr v. Rohr*, 118 Idaho 689, 697, 800 P.2d 85, 93 (1990). To determine whether the magistrate court abused its discretion, this Court evaluates whether the magistrate court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with relevant legal standards; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, No. 45200, 2018 WL 3150964, at *4 (June 28, 2018). The Idaho Legislature delegated authority to promulgate the Idaho Child Support Guidelines (ICSG) to this Court. I.C. § 32-706(5); *Garner v. Garner*, 158 Idaho 932, 935, 354 P.3d 494, 497 (2015). ICSG § 8(c) addresses tax benefits and provides:

> The actual federal and state income tax benefits recognized by the party entitled to claim the federal child dependency exemption should be considered in making a child support award. The parties may agree to an allocation of the dependency benefits. Otherwise, the court should assign the dependency exemption(s) to the parent who has the greater tax benefit calculated from the tables below using the marital status and guidelines income of each parent at the time of the child support award calculation. The parent not receiving the exemption(s) is entitled to a pro rata share of the income tax benefit or child tax credit in proportion to his/her share of the guidelines income. The pro rata share of the income tax benefit will be either a credit against or in addition to the basic child support obligation and shall be included in the child support order.

"If the court determines that circumstances exist to permit a departure from the [ICSG], the judge making the determination shall make a written or specific finding on the record that the application of the guidelines would be unjust or inappropriate in the particular case before the court." I.C. § 32-706(5).

16

Here, the magistrate court and the parties agree that the ICSG instruct that Father should be assigned both dependency exemptions, as Father would realize the greater tax benefit. Father's annual income was found to be $61,506, and Mother's annual income was found to be $26,750. Father, remarried, was entitled to an exemption of $1,800 for the first child and $1,900 for the second child. ICSG § 8(c). Mother, single and with custody, was entitled to an exemption of $1,800 for the first child and $1,700 for the second child. ICSG § 8(c). Therefore, Father would have the greater tax benefit, entitling him to both dependency exemptions.

However, the magistrate court chose to deviate from the ICSG by awarding one dependency exemption to Mother and one to Father. The magistrate court entered an order to that effect on October 6, 2017. This order, however, is not part of the record on appeal. It is therefore impossible to determine whether the magistrate court articulated findings sufficient to deviate from the ICSG, *see* I.C. § 32-706(5), which compels us to affirm the allocation of dependency exemptions. As we have explained,

> [t]he party appealing a decision of the district court bears the burden of ensuring that this Court is provided a sufficient record for review of the district court's decision. When a record or exhibit not included in the record on appeal is unavailable to the party who wishes to make it part of the record for appeal, it is incumbent on that party to move the district court, or petition this Court,[11] to order augmentation of the record on appeal with the relevant record(s) or exhibit(s). When a party appealing an issue presents an incomplete record, this Court will presume that the absent portion supports the findings of the district court. We will not presume error from a "silent record or from the lack of a record."

*Gibson v. Ada Cnty.*, 138 Idaho 787, 790, 69 P.3d 1048, 1051 (2002) (citation omitted). For that reason, the dependency exemption allocation is affirmed.

**D.     We decline to award attorney fees on appeal.**

Both parties seek attorney fees on appeal. Father, the prevailing party on appeal, cites to Idaho Code section 12-121. Section 12-121 authorizes attorney fees to the prevailing party on appeal only if "the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 633, 329 P.3d 1072, 1081 (2014) (internal quotation marks omitted). While Father contends Mother's appeal was frivolous and merely invited us to "second-guess the trial court[,]" we conclude

---

[11] Mother petitioned this Court on March 26, 2018, to augment the record on appeal with a hearing transcript entitled "Motion to Implement Parenting Time Evaluation Recommendations." The motion to augment was granted. Mother has never requested to augment the record with the October 6, 2017, child support order.

Mother has made complex legal arguments in good faith, as shown above. *Cf. In re Doe II (2017-31)*, 163 Idaho 399, ___, 414 P.3d 221, 226 (2018) ("Father made a good faith argument that the termination decision was not supported by the evidence. As such, we cannot say that this appeal was pursued frivolously or unreasonably."). An award of attorney fees is therefore improper on appeal.

## IV. CONCLUSION

We dismiss Mother's physical custody challenges as moot. We affirm the magistrate court's rulings assigning the Children to the Meridian Schools and awarding one dependency exemption to Mother and one to Father. We award costs on appeal, but not attorney fees, to Father as the prevailing party.

Justices HORTON, BRODY, BEVAN and WALTERS, Pro Tem, **CONCUR.**